CHARLES H. McGLUE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 100465. Promulgated November 19, 1941.

*Edmund V. Maloney, Esq.*, for the petitioner.
*Davis Haskin, Esq.*, for the respondent.

(761)

Murdock: The Commissioner filed his answer in this proceeding on March 28, 1940, and in that answer, in paragraphs 8 and 9, made various allegations of fact to support his contention that a part of the deficiency for 1935 is due to fraud with intent to evade tax. No reply was filed on behalf of the petitioner within the time prescribed by the rules of the Board. On May 27, 1940, the Commissioner moved, under Rule 18 of the Board's Rules of Practice, that the allegations of the answer contained in paragraphs 8 and 9 be deemed to be admitted. The petitioner was ordered to show cause, if any, why the prayer of that motion should not be granted. The petitioner ignored the order and the respondent's motion was granted. The facts which were alleged in the respondent's answer, and are thus deemed to be admitted, fully support the finding of fact that a part of the deficiency is due to fraud with intent to evade tax. Furthermore, the evidence introduced at the hearing shows that part of the deficiency is due to fraud with intent to evade tax.

The petitioner did not file a timely income tax return for 1935. He finally filed a return on July 1, 1939, in an attempt to avoid imprisonment under a sentence of the United States District Court of Massachusetts. No proof was offered to show that the penalty for delinquency under section 406 of the Revenue Act of 1935 was improperly imposed, and the facts disclosed by the evidence show affirmatively that the maximum penalty of that section was properly imposed.

Several of the issues raised by the pleadings do not require decision by the Board. The Commissioner, in determining the deficiency, has taxed the petitioner on only one-half of a fee received from the New England Metal Culvert Co. The petitioner recognizes this and makes no further point about it. An assignment of error in regard to $1,000 allegedly paid as interest on a second mortgage on his residence, and another assignment relating to $165 allegedly paid as interest on loans, have been waived. There are no facts in the record which would support deductions under these two assignments even if they had not been waived.

The largest item in controversy is the $30,000 which the petitioner received during 1935 from the Lowell Gas Light Co. Closely related to this item is the $1,500 which the petitioner received during 1935 from the American Gas & Power Co. The petitioner admits that he received these amounts during 1935. He contends that only one-half of the $1,500 is taxable to him as income in 1935 because the other

one-half belonged to Mullin. He says that he and Mullin had an agreement for equal division between them of all fees, less expenses, which should be received for services performed by the petitioner for Seymour and the various companies in which he was interested. He then argues that the work for which he was employed was still unfinished in 1935, the fees undetermined, and the $30,000 which he received was not fees but some kind of a trust fund to be used for expenses and disbursements in connection with further work to be done.

The petitioner testified that he had an agreement to divide fees with Mullin, but the question arises whether his testimony is always worthy of belief. The evidence shows that the payors of the $31,500 paid the money to the petitioner in consideration of his services and without any restriction or condition attached as to how he should use the money. They did not intend to pay him any additional fee and they have never since made any further payment to him. They did not expect the return of any of the money and none of it has ever been returned to them. The petitioner received the money and used it as he saw fit. He paid a part of it to some attorneys for the minority stockholders of the Lowell Gas Light Co. in effecting the settlement, and, apparently, he has spent all of the remainder as he desired for his own purposes. He reported the $1,500 received from the American Gas & Power Co. and $20,000 of the amount received from the Lowell Gas Light Co. as a part of his gross fees on the delinquent return which he filed on July 1, 1939. He did not claim on that return that any part of the $21,500 belonged to Mullin. He attached a memorandum to that return in which he said he had received an additional $10,000 from the Lowell Gas Light Co. to be used by him in such way as he saw fit to bring about a tax abatement by reducing valuations of property of the Lowell Gas Light Co. He argued that this was an expense fund and not a fee, and he added, as an additional reason for not reporting it as income, that when the case was originally brought to him he had agreed to divide the fees equally with Mullin. Mullin never rendered any of the services for which the fees were paid and the payors had no understanding that Mullin was to render any of the service or to receive any of the fees. Mullin has never made any demand upon the petitioner for any part of the fees and the petitioner has never paid or offered to pay any part of those fees to Mullin. The allegation that there was an agreement to divide the fees is supported only by the testimony of the petitioner. The record contains no testimony from Mullin. The petitioner never tried to subpoena Mullin or to take his deposition. Mullin was subpoenaed by the respondent but failed to appear and advised the respondent that he was a member of the Legislature of

Minnesota, which was then in session, and could not appear until later. We have found as a fact, after consideration of all of the evidence in the record, that there was no agreement between the petitioner and Mullin for sharing the fees. Moreover, since the petitioner received all of the $31,500 during 1935 and never paid any of it to Mullin or set any of it aside for Mullin, but, on the contrary, spent it or used it as he saw fit, it is taxable to him even if he should have paid a part to Mullin. We disagree with the statements in the petitioner's brief that "The Petitioner has something to say about when money received by him becomes income. It is largely within his own knowledge and power to declare it or not, under the statutes." This record does not show that the Commissioner erred in including the $31,500 in the gross income of the petitioner for 1935.

The Commissioner, in determining the deficiency, offset the $31,500 by $6,000 which he described as "paid to associates." This represents money paid by the petitioner to counsel for the minority stockholders of the Lowell Gas Light Co. The petitioner says that he paid $14,000 in all to counsel for the minority stockholders. The difference of $8,000 has not been placed in issue by any assignment of error. We are unable to make a finding from the record that the $8,000 was paid during 1935 and the petitioner does not point out how this amount would be deductible under any particular provision of the revenue act. It is not clear that the amount would be deductible even if it had been paid in 1935. Obviously, no change in the determination of the Commissioner can be made based upon the $8,000.

The petitioner was entitled to one-half of a fee of $14,000 received in 1935 for services performed by McGlue & Roche in connection with the Brooks estate. The petitioner does not deny that his share of the fee was $7,000 and he admits the receipt of $2,000 during 1935. He contends that the remaining $5,000 was not actually paid to him by Roche until the latter part of January 1936, and, since he was on the cash receipts basis, that part was not income to him in 1935. The record, consisting of the testimony of the petitioner and Roche and of some documentary evidence, does not clearly disclose whether a part or all of the $5,000 was paid to the petitioner or placed in trust for him in some way in 1935 or whether nothing was done as to the $5,000 during that year. The Commissioner has determined that all of the $7,000 was income to the petitioner for 1935 and any failure of proof works to the petitioner's disadvantage. It is clear that Roche received the $14,000 in 1935 and that he and the petitioner had associated themselves together for the purpose of this particular business. If they were partners, one-half of the fee would be taxable to the petitioner whether it was distributed to him or not. Even

if they were not partners, receipt by Roche, under the circumstances of their association, might be sufficient basis for taxing one-half of the fee to the petitioner in 1935. The petitioner knew in 1935 that Roche had received the money, he had the right to receive the amount from Roche, and, so far as this record shows, he could have received it if he had demanded it. The determination of the Commissioner in regard to the $7,000 will not be disturbed.

The remaining contentions of the petitioner relate to alleged deductions. He attempts to relate two of these items to the Lowell Gas Light Co. income items. One is $3,000 which he says he paid to or for the use of John H. McAuliffe during 1935. Not only does the record fail to show just how much was paid for these purposes during 1935, but no amount would be deductible in any event under any provision of the revenue act. The petitioner argues, "Considering the quasi-politico-legal nature of the Petitioner's profession, the money paid to McAuliffe, the money spent for organization expenses for the Junior Democratic Crusaders, and sums spent for electing various officials to advance the interest of the Petitioner in his particular and specialized form of profession, was a perfectly proper business deduction to which the Petitioner is clearly entitled." The petitioner described his idea as "sort of a political blitzkrieg" in which he would organize local branches of the Junior Democratic Crusaders in various communities throughout the state, not only to work in their own communities for the candidates favored by the petitioner and those in whom he was interested, but to be moved about the state into any community where he thought any candidate needed help. McAuliffe was to go all over the state in an effort to organize these local branches and to arrange meetings. The petitioner spoke at many of the meetings. He attempts to connect these political activities with his business by saying that the Lowell Gas Light Co. would be wanting its taxes reduced and abated in the several communities which it served, and he used this method of developing his prestige with the various elected officers with whom he might have to deal. Obviously, this work had no legitimate connection with the petitioner's business of the practice of law. Not only are political contributions and campaign expenses not deductible, see *David A. Reed,* 13 B. T. A. 513, but expenditures for the purpose of exerting political influence are contrary to public policy and for that reason are not deductible. *T. G. Nicholson,* 38 B. T. A. 190; *Easton Tractor & Equipment Co.,* 35 B. T. A. 189.

The petitioner contends that he is entitled to a deduction for 1935 on account of money which he advanced to Dobbins. He says that Dobbins was a real estate agent and appraiser whom he told to become familiar with the properties of the Lowell Gas Light Co.

The petitioner's idea was that, if he ever had to have the service of an appraiser in connection with the Lowell Gas Light Co. tax abatements which he was seeking, this man would be available. The record does not show that Dobbins ever did anything or that any amount paid to Dobbins would have been deductible as an ordinary and necessary expense of the business of the petitioner under any circumstances. Furthermore, "I. O. U.'s" of Dobbins are in evidence showing that he acknowledged his indebtedness for the money advanced by the petitioner. The best evidence before us is that the advances were loans. The Commissioner did not err in disallowing the deduction claimed.

The petitioner claims the right to deduct $7,500 as a debt ascertained to be worthless and charged off in 1935 within the meaning of section 23 (k). He kept no books and actually made no charge-off relating to this item during 1935. He must rely upon the deduction claimed on his delinquent return to satisfy the statutory requirement of a charge-off. It is inconceivable that a deduction claimed for the first time on July 1, 1939, could satisfy the requirement of the statute that a debt be charged off during the taxable year, which was 1935. Furthermore, the petitioner made no ascertainment of the worthlessness of a debt during 1935. He says that the six-year period of limitation for collection of the debt expired in 1935. Six years from the date the agreement was entered into would be July 11, 1934. The evidence shows that he knew prior to 1935 that the $7,500 would never be paid to him. Additional reasons could be given why he is not entitled to the deduction for 1935.

The petitioner contends that he is entitled to a reduction of $4,237.25 for business expenses, which include office rent, light, postage, stationery, other office supplies, telephone, traveling expenses, and automobile expenses. The Commissioner allowed a deduction of $998.75 for "Office rent and other expenses." We have found as a fact that the petitioner is entitled to a deduction for these expenses of $1,500. This is obviously an approximation. The petitioner kept no books and has no complete record of any of these items. He introduced in evidence a few checks which were helpful, but otherwise merely estimated the amount which he thought he must have expended. We have doubt whether some of the expenditures described by him were actually connected with his business and, as to those, we have tried to keep on the safe side by bearing most heavily upon the petitioner, who has the burden of proof. *Cohan* v. *Commissioner*, 39 Fed. (2d) 540. Also, it has been necessary in the case of some of the items to estimate the minimum of such expenses. A determination of this kind is, of course, unsatisfactory. But the inexactitude is of the petitioner's own making and he must suffer the consequences.

The petitioner claims the right to deduct $600 as interest on a mortgage, and $400 as real estate taxes on his residence at 9 Marlboro Street. Section 23 (b) allows a deduction for all interest paid within the taxable year on indebtedness. This means indebtedness of the petitioner. Section 23 (c) allows a deduction for taxes. This refers to taxes for which the petitioner was liable. These deductions are not allowed where the indebtedness is indebtedness of another and the property subject to the taxes is property of another. The evidence shows that the petitioner did not own the property at 9 Marlboro Street during 1935. He lost it through foreclosure in 1932 and did not reacquire it until 1936. He occupied the residence during 1935, and he actually paid the $1,000 of interest and taxes. It is not clear whether he paid that amount for the privilege of occupancy, as part of the cost of reacquiring the property, or just why he paid it. He was not paying interest on his own indebtedness or taxes on his own property and, therefore, is not entitled to the deductions claimed.

The petitioner paid a personal property tax on his automobile for the year 1935 in the amount of $16.70, which entitled him to a deduction of that amount under section 23 (c). He claims the right to deduct $330 under section 23 (o) for contributions. He testified that he paid $35 in 1935 to insert an advertisement in a magazine of the Newspaper Guild, $16.80 to insert an advertisement in a book of the Workingmen's Club, of Massachusetts, and that he gave an additional amount to that club for a charitable purpose. The evidence does not show that either of these recipients was the kind of organization described in section 23 (o). The petitioner estimated that he gave $270 to two churches which he attended. Having in mind the unreliability of his testimony, we do not feel justified in making any speculation as to the amount which he contributed to the churches. The petitioner testified that he had some income during 1935 from sources other than those heretofore mentioned and on his delinquent return he reported some other income. The Commissioner has not made any claim for an increased deficiency, however, so these items need no further consideration.

*Decision will be entered under Rule 50.*