ESTATE OF WILLIAM R. MING, JR., Deceased, IRVENA H. MING, ADMINISTRATOR WITH THE WILL ANNEXED AND IRVENA H. MING, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Ming v. Commissioner
Docket No. 177-71.
United States Tax Court
T.C. Memo 1976-115; 1976 Tax Ct. Memo LEXIS 287; 35 T.C.M. (CCH) 522; T.C.M. (RIA) 760115; April 15, 1976, Filed Aldus S. Mitchell, for the petitioners. William L. Ringuette, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner has determined deficiencies in and additions to petitioners' income taxes as follows: Additions to Tax
Alternative
Sec. 6653(b),
Additions to Tax Year
Deficiency
I.R.C. 1954
Sec. 6651(a)
Sec. 6653(a)
1964
$ 906.86
$3,495.77
$1,747.89
$ 349.58
1965
503.32
3,194.20
1,597.10
319.42
1966
1,303.89
2,302.20
1,151.10
230.22
*288 Petitioners now concede their liability for the deficiencies in tax. The remaining issues, in respect of the additions and alternative additions to tax, are as follows: 1. Was any part of the underpayment of tax for each year due to the fraud of William R. Ming, Jr.? If such fraud is found, then petitioner Estate of William R. Ming, Jr., is liable for the additions to tax imposed by section 6653(b), but petitioner Irvena H. Ming is not liable for such additions because the parties have stipulated that no part of the underpayments was due to fraud on her part. Also, if fraud on the part of William R. Ming, Jr., is found, the respondent does not seek to support the alternative additions under sections 6651(a) and 6653(a). [1]
2. If it is found that no part of the underpayments was due to fraud, petitioners have stated on brief that they do not contest the section 6651 additions *289 to tax, thereby leaving in issue only whether any part of the underpayments was due to "negligence or intentional disregard of rules and regulations (but without intent to defraud)" so as to make applicable the additions to tax under section 6653(a). FINDINGS OF FACT This case was submitted for decision solely on a stipulation of facts which, aside from stating those facts as to which the parties are in agreement, incorporated a number of documents and presented as the bulk of the evidence herein the record and associated history of a related criminal proceeding involving the same taxpayer, William R. Ming, Jr. (United States v. William R. Ming, Jr., No. 70 C.R. 213, United States District Court, Northern District of Illinois, Eastern Division). William R. Ming, Jr., and Irvena H. Ming resided in Chicago, Illinois, on the date they filed their petition in this case. On June 30, 1973, subsequent to the filing of the petition herein, William R. Ming, Jr., died in Chicago, Illinois. Petitioner Irvena H. Ming was duly appointed and is now acting as "Administrator" with the Will Annexed of the Estate of William R. Ming, Jr. Pursuant to a joint motion of the parties, *290 "Estate of William R. Ming, Jr., Deceased, Irvena H. Ming, Administrator with the Will Annexed", has been substituted for William R. Ming, Jr., the individual, as a party to this proceeding. William R. Ming, Jr., was an attorney whose career was long and distinguished. He served in both state and Federal governments, becoming at one time Assistant Attorney General of the State of Illinois. In addition to working during certain periods of his career as a full-time public servant, Mr. Ming was also a member of a number of special committees which dealt with matters of national importance. These committees included the Administrative Procedure Committee of the United States (Ming appointed by President Nixon), and the President's Lawyers' Committee for the Protection of Civil Rights (Ming appointed by President Kennedy). He was, for a time, a professor of law, first at Howard University, and then at the University of Chicago. Apart from his time to time teaching and public service activities, Mr. Ming not only carried on a busy private practice but also involved himself deeply in the civil rights movement of the 1950's and 1960's. He was a member of the National Board of the *291 National Association for the Advancement of Colored People. His greatest efforts, however, were in support of the N.A.A.C.P. Legal Defense and Educational Fund, Inc. Between 1937 and 1967, Mr. Ming was either counsel or among counsel in all the major litigation in which the N.A.A.C.P. participated; he especially involved himself in those cases which reached the Supreme Court, the most famous of which was Brown v. Board of Education of Topeka,347 U.S. 483. [2] Mr. Ming received no significant compensation for his work on any of these cases. During 1964, 1965 and 1966 -- the tax years specifically before *292 this Court -- Mr. Ming actively pursued both his private law practice and his public service interests. He conducted his practice from offices in Chicago, Illinois, where he was associated with other lawyers practicing under the style of McCoy, Ming and Black. Irvena H. Ming was Mr. Ming's wife from 1941 until his death in 1973. She was employed by the Board of Education of Chicago, as an attendance (truant) officer from 1953 at least through 1970. Between 1964 and 1966 various illnesses affected members of the Ming family. Mr. Ming was hospitalized for approximately one week during November, 1964, because of an intestinal disorder, and an undiagnosed leg ailment kept him laid up, unable to walk, for about ten days during 1966. His mother-in-law died in September, 1965, after a long illness, and his father passed away one year later, also after a long illness. Mr. Ming received self-employment income from his law practice, in at least the amounts shown in the following table: Year
Amount
1962
$ 26,900.76
1963
14,797.41
1964
23,198.64
1965
23,966.64
1966
19,449.77
Mrs. Ming received wages subject to withholding as shown below: Year
Wages
Withholding
1962
$4,741.18
$842.40
1963
4,681.63
832.50
1964
4,525.00
670.60
1965
4,825.00
687.50
1966
5,245.20
838.92
*293 Mr. and Mrs. Ming in fact received taxable income (gross income minus deductions) and incurred joint Federal income tax liabilities as follows: Federal
Income Tax Year
Taxable Income
Liability
1964
$25,739.58
$6,991.54
1965
25,303.31
6,388.39
1966
19,351.75
4,604.39
The Mings maintained adequate books and records from which their income, expenses, and Federal income tax liability could be determined for the years 1964, 1965 and 1966. The records of Mrs. Ming's income consisted primarily of W-2 Forms stating, for each year of her employment, her wages and the amount of Federal income tax withheld therefrom. The records of Mr. Ming's income from his law practice -- which constituted substantially all of his income -- were maintained by the bookkeeper employed at McCoy, Ming and Black. At least during the years 1963 through 1966, inclusive, the bookkeeper prepared by-weekly "draw" or "draw-recap" statements which reported Mr. Ming's share of the firm's net receipts for the preceding two weeks. (The net receipts were computed in such manner as to take into account all office expenses and related deductions.) These draw or draw-recap sheets *294 were in the possession of, available to, or under the direction and control of Mr. Ming. Mr. Ming maintained his own records of his individual business expenses. Mr. Ming has admitted that he knew he received over $600 of gross income during each of the years 1964 through 1966. He in fact knew that he earned many thousands of dollars during each of these years. Nearly every two weeks for the entire period 1964-1966, a check was drawn on the account of McCoy, Ming and Black and was deposited to Mr. Ming's personal account. The amounts of these checks, representing Mr. Ming's full share of the earnings of McCoy, Ming and Black, ranged from a low of $10 to a high of $12,054.16. In almost every case, the check to be deposited was not endorsed by Mr. Ming personally, but instead was endorsed and deposited on his behalf by his secretary. Mr. Ming could have ascertained the exact amount of any of these checks at any time. Mr. Ming knew that every person who received at least $600 of gross income during any of those years was required to file a Federal income tax return for each such year. He also knew that the law required that the return be filed by April 15 of the year following *295 the tax year to which the return related. On May 8, 1956, William and Irvena Ming filed a joint Federal income tax return for the tax year 1955, and paid in full the tax liability disclosed thereon. Thereafter William and Irvena Ming failed to file timely Federal income tax returns for any tax year of the 11-year period 1956 through 1966, inclusive. And they failed to make timely payments of any Federal income taxes due for any of those years. In his criminal trial for willful failure to file returns, Mr. Ming testified that at some time between 1956 and 1967, he asked Arthur J. Wilson, a certified public accountant, to "bring my [Ming's] tax returns down to date". Mr. Ming stated that to accomplish this, he gave Wilson access to his personal records as well as to relevant records of his law firm. He further testified that in 1965 or 1966, he executed a power of attorney, giving Wilson authority to sign tax returns on Ming's behalf. Wilson died on May 22, 1967, before he had filed a single return on behalf of Mr. Ming. In May or June of 1967, following Wilson's death, Mr. Ming called Hiram Pittman of the accounting firm of Washington, Pittman and McKeever. He told *296 Pittman that he had "some tax problems * * * of long duration * * * that required accounting services". Mr. Ming did not identify himself as the taxpayer with the problems. Pittman responded saying that he was too busy to handle these tax problems at that time. However, he agreed to contact Mr. Ming at some time in the future when he could find the time to do the work. On August 10, 1967, Revenue Officer Edmund G. Hawkins was assigned to "contact" Mr. Ming to ascertain whether or not he had filed Federal income tax returns for the years 1964, 1965 and 1966. On that day, Hawkins called Mr. Ming by telephone, identified himself as a Revenue Officer, and stated that the purpose of the call was to establish whether or not Mr. Ming had filed his tax returns for the years 1964, 1965 and 1966. After some discussion, Mr. Ming stated that the returns for the years in question had been filed under the names of William R. Ming, Jr., and Irvena H. Ming, residing at 1037 E. 49th Street, Chicago, Illinois. A search of the files of the I.R.S. Chicago District Office revealed no record of returns filed under those names, and the case was reassigned to Revenue Officer Clifford Matheson on *297 August 11, 1967. Matteson telephoned and spoke with Mr. Ming on August 16, 1967. Matheson asked Mr. Ming to locate and make available for inspection the retained copies of his tax returns for the years 1963 through 1966. He also requested that Mr. Ming produce evidence of payment of the tax liabilities disclosed by those returns. Mr. Ming stated that he needed time for that purpose, that he would gather the records, and he asked Matheson to call him back in two days to arrange a meeting. Matheson called Mr. Ming two days later, as requested, but was unable to reach him by telephone. Later that day, Ellis Reid, an attorney associated with Mr. Ming's law firm, did call Matheson. Reid stated that Mr. Ming was going out of town for a short vacation, but that he, Reid, would gather the necessary documents for inspection. On either August 21, or August 23, 1967, Reid contacted Lester H. McKeever, a certified public accountant associated with the firm of Washington, Pittman and McKeever. At Reid's request, McKeever then went to the offices of McCoy, Ming and Black. There Reid gave him some of the records relating to Mr. Ming's income and also asked him to contact Revenue Officer *298 Matheson of the Internal Revenue Service with regard to those records. On August 22, 1967, four days after he spoke with Reid, Matheson went to the residence address of Mr. and Mrs. Ming, where an unidentified woman told him that Mr. Ming was at his downtown law office. On August 23, 1967, Matheson again telephoned Mr. Ming's law offices and was again unable to speak to him. Matheson left messages asking that Mr. Ming contact him at the I.R.S. South Office in Chicago. On August 24, 1967, McKeever telephoned Matheson on behalf of Mr. Ming. McKeever told Matheson that Mr. Ming had not filed Federal income tax returns for an unknown number of years, and that he, McKeever, had been directed to gather the necessary data and to prepare the missing returns. On October 9, 1967, accountant Pittman reported to Matheson that Mr. Ming's tax returns for certain years were ready and available for his inspection. On October 11, 1967, petitioners submitted delinquent joint Federal income tax returns for the years 1964, 1965 and 1966. Petitioners' delinquent joint Federal income tax returns for 1962 and 1963 were received by the Chief, Intelligence Division, Office of the District *299 Director of Internal Revenue, on August 6, 1968. No payments accompanied any of these returns. Petitioners paid the tax liabilities disclosed by these returns by checks as follows: Tax Year
Date of Check
Amount of Check
1962
June 10, 1969
$7,246.86
1963
June 10, 1969
3,220.09
1964
June 10, 1969
5,414.06
1965
June 10, 1969
5,197.57
1966
Jan. 5, 1970
2,486.20
On or about April 14, 1970, at Chicago, Illinois, a four-count criminal information was filed by the United States Attorney against William R. Ming, Jr. By this information Mr. Ming was charged with willfully failing to file a Federal income tax return for each of the years 1963, 1964, 1965 and 1966, in violation of section 7203 of the Internal Revenue Code of 1954 (26 U.S.C. sec. 7203). Mr. Ming pleaded not guilty to all four counts of the criminal information. He was tried in the U.S. District Court for the Northern District of Illinois, Eastern Division, before Judge Julius J. Hoffman, sitting with a jury. He was found guilty as charged on each of the counts of the information, and was sentenced to four months imprisonment on each count, *300 such sentences to run consecutively. Additionally, Mr. Ming was fined $1,250 on each count and was charged the costs of the prosecution. These fines were imposed cumulatively. Mr. Ming appealed his conviction to the United States Court of Appeals for the Seventh Circuit. The conviction was affirmed in United States v. Ming,466 F. 2d 1000 (C.A. 7). Mr. Ming's petition to the United States Supreme Court for a writ of certiorari was denied, Ming v. United States,409 U.S. 915, as was his petition to that Court for a rehearing, Ming v. United States,409 U.S. 1051. The unmodified finding of guilt thus became final and binding. In the notice of deficiency addressed to the petitioners, the Commissioner determined that all or part of the underpayment of tax * * * [for the years 1964, 1965 and 1966] is due to fraud. Consequently, the 50 percent addition to the tax provided by section 6653(b) * * * is asserted for each of those years. By an amendment to his answer (pursuant to section 6214(a)), the Commissioner claimed that if petitioners were found not liable for the fraud penalty, then in the alternative, they *301 are liable for the additions to tax imposed by sections 6651(a) and 6653(a), not only on the basis of allegations showing that their failure to file returns and report thereon their correct taxable income was due solely to their willfull neglect and negligence or intentional disregard of the rules and regulations, but also on the basis of the doctrine of collateral estoppel (estoppel by judgment). ULTIMATE FINDINGS OF FACT William R. Ming, Jr., knew that he received substantial amounts of taxable income during the years 1964, 1965 and 1966. William R. Ming, Jr., failed to file Federal income tax returns for the years 1964, 1965 and 1966 in order to avoid paying substantial amounts of Federal income taxes which he knew he owed. All or part of the underpayments of tax for each of the years 1964, 1965 and 1966 was due to the fraud of William R. Ming, Jr. OPINION By finding that all or part of the underpayment of tax for each of the years 1964, 1965 and 1966 was due to the fraud of the taxpayer William R. Ming, Jr., we have disposed of the only matter in dispute relating to the section 6653(b) additions to tax. Our task was not a pleasant one. Mr. Ming was a distinguished *302 member of the bar. His career had many facets. He had been a public servant for the State of Illinois as well as for the United States -- in two instances as a Presidential appointee. He had taught at the professorial level at two law schools. He gave freely of his time, generally without compensation, in an impressive number of important civil rights cases. Distinguished character witnesses testified on his behalf. It was with sadness that we reached the conclusion that the Government had established fraud with the clear and convicing evidence that is required in civil fraud cases. [3] See Estate of Upshaw v. Commissioner,416 F. 2d 737, 741 (C.A. 7); Steiner v. Commissioner,350 F. 2d 217, 220 (C.A. 7); Anson Beaver,55 T.C. 85, 92; William G. Stratton,54 T.C. 255, 284. *303 For a period of 11 years, 1956-1966, Mr. Ming filed no Federal income tax returns and paid no taxes on his income. Yet he was a successful attorney and knew that he was required to file returns and pay taxes. His failure to do so was hardly an oversight, and we reject as unacceptable an explanation made at the criminal trial that he was too busy to take care of these obligations. Moreover, in view of his conviction in the criminal case, we are in any event bound by the doctrine of collateral estoppel to treat as already established the fact that his failure to file timely returns for the years before us, 1964-1966, was willful. Cf. John W. Amos,[4]43 T.C. 50, affirmed 360 F. 2d 358 (C.A. 4); Albert Gemma,46 T.C. 821, 834; see generally, Plunkett v. Commissioner,465 F. 2d 299, 305 (C.A. 7), and cases cited. *304 To be sure, while mere willful failure to file a return may not be sufficient in and of itself to establish fraud (see, e.g., First Trust and Savings Bank of Davenport, Iowa v. United States,206 F. 2d 97 (C.A. 8), reversing Kraftmeyer v. United States, an unreported case, 44 A.F.T.R. 1119 (S.D.Iowa); Jones v. Commissioner,259 F. 2d 300, 302 (C.A. 5), reversing on this issue A. Raymond Jones,25 T.C. 1100; Circillo v. Commissioner,314 F. 2d 478, 482 (C.A. 3); Abraham J. Muste,35 T.C. 913, 921) it may nevertheless be taken into account as persuasive evidence of an intent to defraud, particularly where such failure has persisted over a period of years. Powell v. Granquist,252 F. 2d 56, 60-61 (C.A. 9); Stoltzfus v. United States,398 F. 2d 1002, 1005 (C.A. 3), affirming 264 F. Supp. 824, 828 (E.D. Pa.), cert. denied 393 U.S. 1020; Lord v. Commissioner,525 F. 2d 741, 745 (C.A. 9), reversing 60 T.C. 199; Anson Beaver,supra,55 T.C. at 93. And *305 in this case there is more than a mere failure to file. When Revenue Officer Edmund G. Hawkins telephoned Mr. Ming on August 10, 1967, to inquire whether he had filed Federal income tax returns for the years 1964-1966, he falsely stated to Hawkins that returns for those years had been filed. Moreover, he continued his course of deception when another representative of the Internal Revenue Service asked him on August 16, 1967, to make available the retained copies of his returns for 1963-66 and to produce evidence of payment of the tax liabilities shown on those returns. Mr. Ming's response that he would need time (about two days) to assemble the necessary records was merely a desperate attempt to maintain the false position that he had already taken with Hawkins. It was not consistent with innocence. We are quite aware that Mr. Ming thereafter co-operated with the Internal Revenue Service and eventually submitted delinquent income tax returns. But such cooperation, which in other circumstances might be strong evidence of absence of fraud, loses much of its force here by reason of the fact that Mr. Ming began to cooperate only when it was obvious that he had no real alternative. *306 His cooperation began after the Internal Revenue Service had discovered on its own that he had failed to file returns for a number of years. Cooperation, when there is no sensible alternative may indicate a taxpayer's reasonableness and intelligence, but it does not necessarily suggest the absence of fraudulent intent. Cf. Lord v. Commissioner,supra,525 F. 2d at 748. We need not prolong this unhappy opinion. The record is voluminous, and we have given careful consideration to petitioners' various contentions. It is our best judgment on the entire record that fraud has been established by clear and convicing evidence, and our finding of fraud reflects that conclusion. In the circumstances, it is not necessary to consider respondent's alternative contentions in respect of the additions pursuant to sections 6651(a) and 6653(a). Decision will be entered for the respondent in respect of the deficiencies as to both petitioners and the section 6653(b) additions to tax as to Estate of William R. Ming, Jr., Deceased, Irvena H. Ming, Administrator with the will annexed. Footnotes
1. Section 6653(b) itself provides that the addition for fraud thereunder shall be in lieu of the 6653(a) addition, and section 6653(d) provides that if any fraud "penalty" is assessed under subsection (b) thereof no "penalty" shall be assessed under section 6651 with respect to the same underpayment.↩
2. Mr. Ming also participated in the following cases: Hale v. Kentucky,303 U.S. 613; Missouri ex rel Gaines v. Canada,305 U.S. 337; Smith v. Allwright,321 U.S. 649; Lyons v. Oklahoma,322 U.S. 596; Sipuel v. University of Oklahoma,332 U.S. 631; Sweatt v. Painter,339 U.S. 629; McLaurin v. Oklahoma State Regents for Higher Education;339 U.S. 637; and Gomillion v. Lightfoot,364 U.S. 339↩.
3. We have reached this conclusion on the basis of the evidence before us, notwithstanding that there is a possible alternative ground for reaching this result based merely upon the pleadings in this case. Since the burden of proof as to fraud was upon the Commissioner, he set forth his allegations of fraud in his Answer to the petition, and those allegations are contained in paragraph 9 (subparagraphs (a) through (k)) of the Answer. Upon petitioners' failure to file a reply to the Answer, the Commissioner moved (under old Rule 18(c)) for entry of an order that the undenied allegations in the Answer be deemed admitted. There was no appearance on behalf of the petitioners at the hearing on that motion which was held on August 25, 1971. The Court granted the Commissioner's motion in part, and on the same day, entered an order stating that the undenied affirmative allegations in the Answer were "deemed admitted, except paragraphs 9(d), (e), (i), (j), and (k)." In limiting its order so as not to establish conclusively the allegations of fraud, the Court acted upon the oral suggestion of Government counsel. Subsequently, the Commissioner was permitted to file an amendment to his Answer (setting forth in new paragraphs 10 and 11 not only the Government's claims for alternative additions to tax under sections 6651 and 6653(a) but also allegations of collateral estoppel based upon Mr. Ming's criminal conviction). Petitioners filed a motion on March 1, 1974, in which they asked the Court not only to extend the time in which to file a reply to the Amendment to Answer, but also to vacate the order of August 25, 1971, by which certain of the undenied allegations of the Answer were deemed admitted. In support of the latter plea, they alleged that they had not recognized the significance of the action proposed by the Commissioner in his original Rule 18(c) motion. On March 4, 1974, the Court granted both parts of petitioners' motion of March 1. Thereafter, following petitioners' unsuccessful attempt to have their case dismissed without prejudice (62 T.C. 519), they filed their "Reply" on August 15, 1974. In this Reply, they denied only some of the allegations in paragraphs 10 and 11 of the Amendment to Answer. They still did not make any response to the Commissioner's fraud allegations in paragraph 9 of the original Answer. The Commissioner thereupon moved (under new Rule 37(c)) for the entry of an order that the allegations of fact in subparagraphs 9(a) through (k) of the Answer (which remained undenied) and in those subparagraphs of paragraphs 10 and 11 of the Amendment to Answer which petitioners did not deny in their Reply, be deemed admitted. A hearing was held on this motion on October 30, 1974, and, as had been the case in 1971, there was no appearance on behalf of petitioners at the hearing.The Court granted the Commissioner's motion without any qualification, and entered an order specifically stating "the undenied allegations of fact set forth in subparagraphs 9(a) through (k) of the answer * * * are hereby deemed admitted." Accordingly since the Commissioner's allegations of fact involving the fraud issue are now deemed admitted, there is a strong basis for the contention that further proof was not necessary to establish the correctness of the section 6653(b) additions to tax. Cf. John Albert Gilday,62 T.C. 260; Louis Morris,30 T.C. 928; Charles H. McGlue,45 B.T.A. 761↩.
4. We recognize, of course, that the criminal conviction in Amos was for attempted evasion and that such conviction operated through the doctrine of collateral estoppel to establish conclusively that a part of the resulting deficiencies was "due to fraud". The criminal conviction here was for willful failure to file returns, and although the conviction cannot operate as collateral estoppel to establish fraud conclusively, it can serve to establish conclusively the willful character of the failure to file. In Gemma,↩ the taxpayer pleaded guilty to the charge of willful failure to file.