JAMES S. SANCHEZ and DOROTHY P. SANCHEZ A/K/A JAMES S. PACHECO and DOROTHY P. PACHECO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sanchez v. Commissioner
Docket No. 3882-75.
United States Tax Court
T.C. Memo 1980-237; 1980 Tax Ct. Memo LEXIS 350; 40 T.C.M. (CCH) 585; T.C.M. (RIA) 80237; July 7, 1980, Filed James S. Sanchez, pro se. Henry E. O'Neill, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioners' Federal income taxes and additions to the tax for fraud as follows: Addition
Year
Deficiency
Sec. 6653(b) [1]
1971
$3,932.40
$1,966.20
1972
6,091.95
3,045.98
The issues presented are whether petitioners had unreported income in the amounts determined by respondent and whether, with respect to petitioner James S. Sanchez, also known as James *351 Pacheco (hereinafter "petitioner" or "petitioner-husband"), any part of the deficiencies for the years in issue was "due to fraud" within the meaning of section 6653(b). [2]
The facts upon which our report is based were largely determined during the protracted procedural history of this case, which we shall therefore briefly relate. Respondent filed his answer to the petition on August 5, 1975. In his answer, respondent set forth a number of affirmative allegations of fact in support of his determinations of fraud. Petitioners filed no reply denying these allegations, despite our granting petitioners four extensions of time within which to so file. Therefore, by our Order dated June 16, 1976, and pursuant to Rule 37(c), Tax Court Rules of Practice and Procedure, we granted respondent's motion to have the affirmative allegations in the answer deemed admitted by petitioners, except that the word "fraudulently," where it appeared, was not deemed admitted. Respondent redetermined petitioners' taxable income for 1971 and 1972 using the net worth method, that is, by adding petitioners' personal *352 and other nondeductible expenditures to the increases in petitioners' net worth for each year. Two major expenditures included in respondent's calculations were a $14,600 down payment on a residence in 1971 and a $6,537 cashier's check purchased in 1972. During informal meetings held with respondent prior to trial, [3] petitioners claimed to have borrowed the funds for these two expenditures. However, petitioners refused to name the individuals who had provided these loans. Respondent subsequently served interrogatories upon petitioners asking them to disclose the sources of these funds. Petitioners did not reply, and respondent moved that sanctions be imposed under Rule 104(c)(2), Tax Court Rules of Practice and Procedure, prohibiting petitioners from introducing evidence regarding the sources of the expenditures at issue. When the case came on for trial, petitioners had still failed to reply to respondent's interrogatories. Consequently, most of petitioner-husband's testimony at trial was, in effect, received for the purpose of *353 ruling on respondent's motion for sanctions. Petitioner testified that the funds for the $6,537 cashier's check purchased in 1972 were borrowed from individuals so related to the narcotics trade that his life would be threatened if he revealed their names. In addition, petitioner testified that the $14,600 with which he had purchased a residence in 1971 was a gift from his father-in-law to petitioners' children. However, petitioner explained that his father-in-law had died prior to trial and had kept no records because he was an illegal alien who feared deportation. Neither of these excuses satisfactorily explains why petitioner was unable to answer respondent's interrogatories. Moreover, the common element shared by these two stories is that neither can now be in any way corroborated. Given these circumstances, respondent's motion that sanctions be imposed was granted at trial, and petitioner's testimony with respect to the sources of funds for these two expenditures has therefore not been considered in our findings of fact. Finally, the stipulation of facts introduced in this case was executed only by respondent and petitioner-husband. Accordingly, these facts are not found *354 as stipulations by Dorothy Sanchez, also known as Dorothy Pacheco. However, as binding admissions by respondent and petitioner-husband, the facts stipulated may be considered as evidence in this case with respect to all of the parties. FINDINGS OF FACT At the time their petition was filed in this case, petitioners James S. Sanchez and Dorothy Sanchez, also known as James and Dorothy Pacheco, were legal residents of San Francisco, Calif. Petitioner-husband was then incarcerated at the California Mens Colony, San Luis Obispo, Calif.
During 1971 and 1972 petitioner drove a truck for Fowcar, Ray & Simon, Inc., a company specializing in steel and steel tubing. Petitioner received gross wages from truck driving of $5,015.73 and $10,384.94 in 1971 and 1972, respectively, and not wages after withholding of taxes and social security of $3,992.81 and $8,076.29. In 1972, petitioner also received nontaxable workmen's compensation benefits totaling $2,387.50. In addition, during each of the years in issue petitioners realized income from the renting of half a duplex, at 938 Treat Avenue, San Francisco; from certificates of deposit at Wells Fargo Bank, San Francisco; and from the sale *355 of narcotics by petitioner-husband. Petitioners did not maintain or submit to respondent records or books of account in connection with their income-producing activities during the years in issue. Some of petitioners' purchases during those years were made with cash, and not all of petitioners' income from dealing in narcotics and from other activities was deposited in petitioners' checking accounts. At trial, petitioner vigorously denied ever having sold narcotics or having received income from narcotics. Petitioner was arrested on December 1, 1972, and eventually charged with three counts of the unlawful sale of narcotics (heroin), one count of unlawful possession for sale of narcotics (13 ounces of heroin), one count of possession of an illegal weapon (sawed-off shotgun), one count of possession of concealable firearms (18 handguns) by a felon (petitioner was convicted of possession and sale of marijuana in 1965), and three counts of receiving stolen property (two revolvers and a camera). Petitioner was convicted by a jury on all nine counts. On December 4, 1972, petitioners' 1972 taxable year was terminated, and termination assessments were made with respect to both petitioners *356 under section 6851. The next day, petitioners tendered under protest to the Internal Revenue Service a cashier's check in payment of the termination assessments in the amount of $6,537. On petitioners' 1971 income tax return, they reported as income only petitioner-husband's wages of $5,015.73. On their 1972 return, petitioners reported gross income totaling $12,328.63 from wages, interest, and rents, and, after itemizing deductions, they reported taxable income of $4,511.15. Respondent's redetermination of petitioner's taxable income using the net worth method, all of the facts of which were deemed admitted by petitioners, establishes that petitioners understated their taxable income for 1971 and 1972 as follows: 1971
1972
Increase in net worth
$16,758.27
$ 3,439.26
Expenditures for personal
and other nondeductible
purposes
6,072.36
34,375.93
Total
22,830.63
37,825.19
Less: Nontaxable receipts
plus deductions associated
with rental property
0
(4,455.81)
Correct taxable income
22,830.63
33,369.38
Less: Net income reported
(5,015.73)
(10,528.63)
Understatement
$17,814.90
$22,840.75
In addition, petitioners are deemed to have admitted *357 the following understatements of tax liability: 1971
1972
Correct income tax liability
$4,016.40
$6,744.95
Tax liability reported on return
84.00
653.00
Understatement of tax liability
$3,932.40
$6,091.95
Among the major expenditures included by respondent in determining petitioners' correct taxable income for 1971 were the following: a $14,700 downpayment on a duplex residence at 938-940 Treat Avenue, San Francisco, certificates of deposit at Wells Fargo Bank totaling $2,058.27, and checking account expenditures totaling $2,045.44. In determining petitioners' taxable income for 1972, respondent included, among other expenditures: $9,295 used to purchase heroin, a $6,537 cashier's check tendered in payment of taxes, $1,490.10 in old and silver coins placed in safety deposit boxes, a cash downpayment on furniture of $600, a $600 certificate of deposit at Wells Fargo Bank, windows for petitioners' duplex at 938-940 Treat purchased for $1,550 in cash, and checking account expenditures of $10,386.75. Petitioners received no loans, gifts, inheritances, or nontaxable receipts other than workmen's compensation benefits totaling $2,387.50 in 1972. In his *358 statutory notice of deficiency, respondent increased petitioners' taxable income and taxes due as set forth above, and asserted penalties on the ground that petitioners' returns for each year fraudulently understated their tax liability. OPINION The first issue in this case is whether petitioners are liable for deficiencies in Federal income taxes in the amounts determined by respondent. Petitioners have the burden of proof on this issue, notwithstanding respondent's burden of proof with respect to the issue of fraud. Stone v. Commissioner,56 T.C. 213, 224 (1971). The facts deemed admitted by petitioners and petitioner-husband's narcotics convictions in 1965 and 1972 certainly satisfy the "minimal evidentiary foundation" requirement of Weimerskirch v. Commissioner,596 F.2d 358, 361 (9th Cir. 1979), revg. 67 T.C. 672 (1977). [4]
For reasons already discussed, we did not allow petitioners *359 to introduce as evidence petitioner-husband's statements about two allegedly nontaxable receipts in 1971 and 1972. We are left with petitioners' deemed admissions that they received no loans, gifts inheritances, or other excludable receipts in the years in issue, other than those specifically taken into account by respondent in redetermining petitioners' taxable income using the net worth method. Petitioners' only other evidence was the testimony of petitioner-husband that he had never sold narcotics or received narcotics income. Petitioner-husband's convictions for selling heroin in 1972 do not, of course, collaterally estop petitioners from denying having sold narcotics. See Commissioner v. Sunnen,333 U.S. 591 (1948). However, based upon our evaluation of petitioner's character and demeanor on the witness stand and all of the other evidence presented, we are convinced that petitioner-husband's bald denials are not credible. Petitioners' expenditures in each year far exceeded their visible means of support. Petitioner-husband was in possession of more than three-quarters of a pound of heroin at the time of his arrest. Moreover, petitioner testified that he *360 was so involved with individuals in the drug trade that his life would have been threatened for revealing their names. Taken as a whole, the evidence demonstrates that petitioners received substantial amounts of income from dealing in narcotics in each year in issue. We therefore sustain respondent's determinations of deficiencies in petitioners' Federal income taxes. The second issue in this case is whether any part petitioner-husband's underpayments of his income taxes in the years in issue was due to fraud with intent to evade tax.
Fraud is an intentional act of wrongdoing with the specific purpose to evade a tax believed to be owing. Mitchell v. Commissioner,118 F.2d 308 (5th Cir. 1941). The existence of fraud is a question of fact to be determined from the entire record. Stratton v. Commissioner,54 T.C. 255 (1970). Respondent has the burden of proof and must establish fraud by clear and convincing evidence. Sec. 7454(a); Imburgia v. Commissioner,22 T.C. 1002 (1954). In addition, respondent must show that some part of the underpayment of tax was due to fraud for each taxable year in issue. Otsuki v. Commissioner,53 T.C. 96 (1969). *361 Because direct evidence of fraudulent intent is seldom available, respondent's burden may be met with circumstantial evidence. Spies v. United States,317 U.S. 492 (1943); Powell v. Granquist,252 F.2d 56 (9th Cir. 1958). It is well settled that respondent may carry his burden by affirmative allegations in the answer which have been deemed admitted under our Rule 37(c), Tax Court Rules of Practice and Procedure.Gilday v. Commissioner,62 T.C.260 (1974); McGlue v. Commissioner,45 B.T.A. 761 (1941). Petitioner was given ample opportunity to reply to respondent's affirmative allegations, but declined. Furthermore, petitioner has not challenged the figures used by respondent in redetermining petitioner's income using the net worth method. See generally Holland v. United States,348 U.S. 121 (1954). After a careful consideration of the entire record, we find the respondent has proven by clear and convincing evidence that petitioner fraudulently understated his correct taxable income on his returns for 1971 and 1972. Fraud is never lightly imputed, and, standing alone, a failure to report income is not ordinarily *362 sufficient to establish fraud. Merritt v. Commissioner,301 F.2d 484 (5th Cir. 1962), affg. a Memorandum Opinion of this Court. But very substantial understatements may be enough to negate any inference of innocent intent. Lollis v. Commissioner,595 F.2d 1189 (9th Cir. 1979), affg. a Memorandum Opinion of this Court; Baumgardner v. Commissioner,251 F.2d 311 (9th Cir. 1957), affg. a Memorandum Opinion of this Court; Romm v. Commissioner,245 F.2d 730 (4th Cir. 1957). On their income tax returns filed for the years in issue petitioners understated their adjusted gross income in 1971 by 79.0 percent and their taxable income in 1972 by 84.6 percent. Petitioners' taxes for 1971 and 1972 were understated by 97.9 percent and 90.3 percent respectively. Such understatements are very strong evidence of fraud. Kurnick v. Commissioner,232 F.2d 678 (6th Cir. 1956), affg. a Memorandum Opinion of this Court. In addition, respondent has proven the likely source of petitioner's unreported income. Petitioner was dealing in narcotics, was making purchases with cash, and failed to cooperate with respondent *363 both in the determination of petitioner's correct taxable income and in the prosecution of this case. See Powell v. Granquist,supra. Taken as a whole, the record in this case is replete with evidence that petitioner willfully concealed taxable income with intent to evade tax. See Stone v. Commissioner,supra;Acker v. Commissioner,26 T.C. 107 (1956). Based on the above, we conclude that respondent has met his burden of proof with respect to each year and that petitioner is liable for the penalty imposed by section 6653(b). To reflect respondent's concession on the issue of fraud with respect to Dorothy Sanchez, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. Respondent has withdrawn his assertion of fraud on the part of petitioner-wife.↩
3. See Rules 70(a)(1), 90(a), Tax Court Rules of Practice and Procedure; Branerton Corp. v. Commissioner,61 T.C. 691↩ (1974).
4. See also De Cavalcante v. Commissioner,45 AFTR2d 80-1428, 80-1 USTC par. 9363 (3d Cir., Apr. 16, 1980), affg. a Memorandum Opinion of this Court; Llorente v. Commissioner,74 T.C. No.↩ 20 (May 13, 1980).