WILLIAM J. HAGERTY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hagerty v. Commissioner
Docket No. 7131-71.
United States Tax Court
T.C. Memo 1981-234; 1981 Tax Ct. Memo LEXIS 512; 41 T.C.M. (CCH) 1472; T.C.M. (RIA) 81234; May 11, 1981. Robert J. Bartlett, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioner's Federal income taxes and additions to tax as follows: Addition
Year
Deficiency
Sec. 6653(b) [1]
1960
$ 45,773.64
$ 22,886.82
1961
37,530.82
18,765.41
1963
22,264.09
When this case was called for trial on March 16, 1981, petitioner did not appear. Respondent moved that the case be dismissed for failure properly to prosecute, and the Court granted respondent's motion as to the deficiencies but not as to the section 6653(b) additions to tax for fraud. See Rule 123(b), Tax Court Rules of Practice and Procedure. Thus, the only issue remaining is whether any part *513 of petitioner's underpayment of tax in 1960 or in 1961 was due to fraud. FINDINGS OF FACT [2]
Petitioner, William J. Hagerty, was a resident of Switzerland when he filed his petition in this case. During 1960 and 1961, petitioner was involved in the business of selling silver polish and related products in the United States and Canada. In 1960, operations in both countries were run as a proprietorship. On or about April 1, 1961, petitioner formed a corporation, W.J. Hagerty and Sons, Ltd., Inc., (the corporation) of which petitioner *514 was the sole shareholder. The corporation handled United States' sales, and, after its formation, United States and Canadian operations were run separately. A partnership return was filed reporting Canadian operations during 1961. During 1960 and 1961, petitioner maintained business checking accounts at the National Bank and Trust Company in South Bend, Ind., for United States business and at the Royal Bank of Canada, in Toronto, Canada, for Canadian business. Those accounts will hereinafter be referred to as the business accounts. During 1960, R.W. Cameron and Company, Inc. (Cameron) purchased products from petitioner's proprietorship. On November 15, 1960, the proprietorship sent Cameron two invoices totaling $ 2,571.79. On January 20, 1961, Cameron sent a check in full payment to W. J. Hagerty and Sons (the proprietorship). On February 1, 1961, petitioner deposited the Camberon check to a joint savings account maintained in his name at the First Bank and Trust Company in South Bend, Ind. The Cameron check was not credited to either business account; nor was it reflected on petitioner's books and records for 1960 or 1961, on petitioner's Federal income tax returns for 1960 *515 and 1961, or on the partnership return filed for 1961. During 1961, further sales were made to Cameron via the Canadian operations. Between January 31, 1961, and December 29, 1961, Cameron issued checks either to W. J. Hagerty and Sons or to the corporation totaling $ 8,335.98. All the checks were payments made pursuant to invoices sent during 1961. Those checks were deposited to various savings accounts maintained in petitioner's name at four different banks in South Bend, Ind. None of the checks were credited to either business account. Nor were any of the checks reflected in petitioner's or any of his businesses' books and records, on petitioner's Federal income tax returns for 1960 or 1961, on the partnership return filed for 1961, or on the corporation's return for the fiscal year ending March 31, 1962. During 1960 and 1961, petitioner, operating as a United States proprietorship, bought raw materials from Great Lake Carbon Corporation, Los Angeles, Calif. (GLCC). Petitioner paid for those raw materials in full and deducted the full amount on his 1960 and 1961 individual Federal income tax returns. Part of the materials petitioner purchased from GLCC were delivered *516 to Overton Chemical Sales, Inc. (Overton). Overton reimbursed petitioner for the materials by checks drawn for $ 1,319.37 on October 11, 1960, and for $ 1,541.17 on March 22, 1961. The payments were made pursuant to invoices sent to Overton by petitioner on October 3, 1960 and March 15, 1961, respectively. The amounts received from Overton were not reflected on petitioner's books and records for 1960 or 1961, on petitioner's individual Federal income tax returns for 1960 or 1961, on the partnership return filed for 1961, or on the corporation's return for fiscal year ending March 31, 1962. In fact, the receipts from Overton were deposited to savings accounts maintained in petitioner's name. On December 14, 1960, petitioner drew a check on the Canadian business account for $ 5,132.87 to Toronto Cosmetic Packagers (TCP), and deducted the $ 5,132.87 as a packaging expense on his 1960 individual Federal income tax return. On May 31, 1961, another check was drawn on the Canadian business account for $ 5,867.13 to TCP. Both checks were deposited to a checking account maintained in TCP's name at the Bank of America, Los Angeles, Calif., and both were endorsed by Mrs. Richard Casey, *517 who was the TCP account signatory and petitioner's mother. There was no business entity named Toronto Cosmetic Packagers to which petitioner or any of his businesses was indebted. On January 27, 1961, a cashier's check in the amount of $ 4,932.87 was deposited to a savings account maintained in petitioner's name. That cashier's check was bought with funds withdrawn from the TCP account. On December 4, 1961, a check for $ 5,911.13 was drawn on the TCP account payable to "Joseph F. Seikmann." This check was endorsed "Joseph F. Seikmann" by petitioner and deposited to a brokerage account maintained in the corporation's name. On December 15, 1961, petitioner drew a check on his account with the London Branch of the Royal Bank of Canada to Ripley, Preston and Company, Limited (Ripley), in the amount of $ 22,366.31. Petitioner deducted that $ 22,366.31 as an advertising expense on his 1961 individual Federal income tax return. In fact, neither petitioner nor any of his business entities owed Ripley any amount in December 1961. Invoices purportedly covering the $ 22,366.31 "payment", were prepared by Ripley in 1963 at petitioner's request and backdated to December 1961. From *518 July 14, 1961, through October 11, 1961, a series of checks were drawn by the corporation to various payees. The total amount of those checks, $ 14,310.62, was deducted as an advertising expense on the corporation's Federal income tax return for the fiscal year ending March 31, 1962. Actually, the checks were cashed by petitioner and applied to his personal benefit. Petitioner did not report the $ 14,310.62 as income on his 1961 individual Federal income tax return. OINION The only issue for decision is whether any part of petitioner's underpayment of tax in 1960 and 1961 was due to fraud within the meaning of section 6653(b). Section 6653(b) imposes an addition to tax equal to 50 percent of the underpayment of tax in a year, if any part of the underpayment is due to fraud. Whether fraud exists is a question of fact to be determined from the entire record. Stratton v. Commissioner, 54 T.C. 255 (1970). Respondent has the burden of proof to establish fraud by clear and convincing evidence. Sec. 7454(a); Imburgia v. Commissioner, 22 T.C. 1002 (1954). Furthermore, respondent must show that some part of the underpayment of tax was due to fraud *519 for each taxable year in issue. Otsuki v. Commissioner, 53 T.C. 96 (1969). However, respondent is not required to prove the precise amount of the underpayment resulting from fraud. Otsuki v. Commissioner, supra.See Estate of Brame v. Commissioner, 25 T.C. 824 (1956), affd. per curiam 256 F.2d 343 (5th Cir. 1958). Only in rare cases will direct evidence of fraudulent intent be available. Therefore, respondent's burden to prove fraud may be met with circumstantial evidence. Spies v. United States, 317 U.S. 492 (1943); Powell v. Granquist, 252 F.2d 56 (9th Cir. 1958). It is well settled that respondent may carry his burden by deemed admissions. See generally Gilday v. Commissioner, 62 T.C. 260 (1974); McGlue v. Commissioner, 45 B.T.A. 761 (1941). Based upon the facts deemed admitted in this case, the reasonable inferences to be drawn from those facts, and our examination of petitioner's returns, we find that respondent has clearly and convincingly demonstrated fraud for both 1960 and 1961. First, in each year, petitioner omitted significant *520 amounts of income from his returns and knowingly took deductions which were not allowable. Such a pattern is very strong evidence of fraud. Lollis v. Commissioner, 595 F.2d 1189 (9th Cir. 1979), affg. a Memorandum Opinion of this Court; Kurnick v. Commissioner, 232 F.2d 678 (6th Cir. 1956), affg. a Memorandum Opinion of this Court. Second, in each year, petitioner failed to reflect various "business" transactions on his books and records. Under these circumstances, the failure to keep records of all earnings is material evidence of fraud. See Baumgardner v. Commissioner, 251 F.2d 311, 322 (9th Cir. 1957), affg. a Memorandum Opinion of this Court; Otsuki v. Commissioner, supra at 109. Third, we find petitioner's extensive business dealings; his maintenance of multiple personal bank accounts; and, especially his use of a nonexistent business entity, Toronto Cosmetic Packagers, to support fraudulent deductions as additional evidence that he knew what he was doing and that he fraudulently intended to avoid tax. Compare Iley v. Commissioner, 19 T.C. 631 (1952). Thus, we find respondent has *521 met his burden of proving that some part of petitioner's underpayment of tax in both 1960 and 1961 was due to fraud. Accordingly, the section 6653(b) additions to tax were properly determined. To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. Our findings of fact are based on the pleadings and respondent's request for admissions. Petitioner did not reply to a request for admissions filed by respondent on April 22, 1980. Therefore, under Rule 90(c), Tax Court Rules of Practice and Procedure, the requested admissions are taken as established for purposes of this case. See Freedson v. Commissioner, 65 T.C. 333 (1975), affd. 565 F.2d 954↩ (5th Cir. 1978). However, we do not rely on assertions made in respondent's request for admissions which merely reiterate assertions made in respondent's answer and which petitioner specifically denied in his reply.