Harold G. **STEINER** and Ollie Mae Steiner, Petitioners-Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE,** Respondent-Appellee.

No. 14550.

United States Court of Appeals
Seventh Circuit.

July 12, 1965.

Rehearing Denied Aug. 16, 1965.

Robert J. Downing, William M. Ward, Chicago, Ill., for petitioners-appellants.

Louis F. Oberdorfer, Asst. Atty. Gen., Tax Division, Marco S. Sonnenschein, Meyer Rothwacks, Joseph M. Howard, Attys., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before KNOCH, CASTLE and KILEY, Circuit Judges.

KILEY, Circuit Judge.

Petitioners seek to set aside a judgment of the Tax Court, in consolidated dockets,[1] confirming the Commissioner's deficiency assessments with interest and fraud penalties for the taxable years 1945, 1946 and 1947, totaling $304,-477.64.[2] We affirm the judgment.

Harold G. Steiner and his accountant prepared Steiner's 1945 individual federal income tax return and in 1946 and 1947 Steiner prepared joint returns for himself and his wife.[3] Since all of the issues concern Steiner's business affairs, we shall refer to him in this opinion as "taxpayer."

During the taxable years in question taxpayer was sole proprietor of the Juneau County Creamery in Mauston, Wisconsin, engaged in the purchase, sale and processing of milk and milk products. The books of the business were kept by Margaret Steiner, a sister-in-law of taxpayer, who had been employed in the same capacity in the creamery before tax-

---

1. Docket No. 79470 for the year 1945 involving Harold G. Steiner alone, and Docket No. 79469 for the years 1946 and 1947 involving Harold G. and Ollie Mae Steiner were consolidated in the Tax Court.

2. By amended answers the Commissioner determined the deficiencies and additions to the tax as follows:

| Petitioner | Docket No. | Year | Deficiency | Additions to tax—I.R.C. 1939 | | |
|---|---|---|---|---|---|---|
| | | | | Sec. 293(b) | Sec. 294(d) (2) | Sec. 294 (d) (1) (A) |
| Harold G. Steiner | 79470 | 1945 | $26,337.59 | $13,168.80 | $1,506.09 | — |
| Harold G. Steiner and Ollie Mae Steiner | 79469 | 1946 | 82,827.24 | 41,413.62 | 4,969.63 | — |
| | | 1947 | 84,436.90 | 42,218.45 | — | $7,599.32 |

3. For 1945 Steiner reported taxable net income of $5,513.48 and tax liability of $993.90. In their joint return for 1946 Steiner and his wife reported taxable net income of $44,020.81 and tax liability of $20,405.39, and for 1947 they reported taxable net income of $10,490.09 and tax liability of $2,182.05.

payer acquired it in 1945. Margaret Steiner kept a single-entry set of books, and income for 1946 and 1947 was computed by subtracting from total bank deposits of the business for the year certain "adjustments," e. g., for refunds. It does not appear from the record how income for 1945 was computed. Taxpayer reported net sales for the years in question of $544,599.60, $1,410,408.87, and $1,410,715.61.

Taxpayer tried this case in the Tax Court and presents this appeal solely on the major issue of whether fraud was proved, "and not on the issue of whether petitioners could or would undertake the burden of overcoming the Commissioner's deficiencies."

■■■ The vital issue in the case is, therefore, whether the Commissioner met his burden of showing fraud, by clear and convincing evidence, in connection with each of the taxable years in question, so as to render the three year statute of limitations on deficiency assessments [4] inapplicable. If such a showing was made, the limitation statute is inapplicable to the entire deficiency for each year. Mensik v. Commissioner of Internal Revenue, 328 F.2d 147, 150 (7th Cir. 1964). The finding of fraud by the Tax Court is a finding of fact; it is not clearly erroneous and cannot be set aside on this appeal. Int.Rev.Code of 1954, § 7482; Bender v. Commissioner of Internal Revenue, 256 F.2d 771, 774–775 (7th Cir. 1958).

The Tax Court found fraud for the years 1945, 1946 and 1947 in connection with the so-called "revolving fund" maintained by taxpayer during those years, for 1946 in connection with sales through salesmen named Boyd and Green, and for 1947 in connection with the deposit in the bank of $24,000 from the revolving fund and its designation on the creamery's books as a bank loan when it was actually proceeds of sales; and presumably for all three years based on a false affidavit concerned with opening cash on hand submitted to the Internal Revenue Service in 1958.

■■ An inference of willful attempt fraudulently to defeat or evade income tax liability can be based on the facts of making false entries or alterations, covering up sources of income, concealment of assets, or any "handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal." Spies v. United States, 317 U.S. 492, 499, 63 S.Ct. 364, 87 L.Ed. 418 (1943).

The "revolving fund" on which the Tax Court based its finding of fraud was a cash fund, kept by taxpayer in a safe in his office, and which he told Internal Revenue agents had been maintained for the purpose of making over-O.P.A. ceiling price sales and purchases. He told the agents that an entry in the creamery's books for 1947 showing a $24,000 loan from the Bank of Mauston, of which the bank had no record, actually was from the revolving fund in the office safe, and that they could include the amount in income for any year or spread it over all three years, but that he did not care what tax liability they arrived at, since

> I had connections in Washington to get at the sugar I wanted when the O.P.A. was in effect and those same connections will work for me now.

In an audit made of the creamery's books by a public accounting firm hired by taxpayer, the $24,000 "loan" was analyzed and all but $1,200 was treated as "unidentified income" for 1947.

Margaret Steiner, in a 1952 affidavit made at taxpayer's request, described the revolving fund as cash from over-ceiling price sales and stated that taxpayer decided that the "net increment" in the fund should be deposited in the creamery's bank account but that because of the danger of O.P.A. prosecutions the $22,800 item was shown on the books as a loan rather than income.

At the trial Margaret Steiner admitted signing the affidavit, but denied hav-

ing any knowledge of the revolving fund. The Tax Court, as trier of fact, because of what it found to be the witness' apparent willingness to make contradictory statements where to do so might benefit the taxpayer, chose to disbelieve the denial and her testimony that taxpayer was ignorant of and lacked involvement in the failure to report the amount in question as income.

During 1945 taxpayer sought a stockbroker's advice about the possibility of making a cash purchase of $25,000 or $50,000 worth of bonds without the purchase being reflected on the books of the brokerage firm. He explained that the cash would come from a revolving fund from sales in excess of O.P.A. ceiling prices, and that since these amounts were not reflected in the books of the creamery, he did not want them reflected on the books of a brokerage firm. The record does not disclose that any bonds were purchased.

Taxpayer testified that in 1947 he, by telephone from Florida, gave instructions to his office manager to deposit in the bank the $24,000 cash in the fund and to show it on the records "so that there would be no question as to tax liabilities and so on and so forth, because I wanted no trouble." The $24,000 in cash was then deposited in the creamery's account, and recorded on the books of the business as a loan from the bank. This item was deducted from gross sales for 1947, in computing net income for purposes of taxpayer's 1947 federal income tax return, and the amount was not reported as income for that year.

In his testimony, taxpayer denied the existence of the revolving fund, denied the conversation with the broker, denied having made certain statements to the agents, denied any involvement in designating the $24,000 as a loan, and asserted that the $24,000 was merely accumulated cash from ordinary sales. The Tax Court, because of taxpayer's inconsistent statements, disbelieved his self-serving testimony.

In 1948 taxpayer supplied to Internal Revenue agents a sworn statement showing cash on hand in the amount of $10,900 as of December 31, 1947, which taxpayer said represented his best estimate and recollection, since he had no records to show the amount. In 1952 taxpayer's then attorney submitted to agents of the Internal Revenue Service Penal Division net worth statements showing cash on hand of $15,500 as of December 31, 1944, and $11,773 as of December 31, 1947.

A net worth statement prepared by the public accounting firm hired by taxpayer in 1951 from the books and records of the creamery and without any independent verification of the accuracy of those records showed cash on hand as of December 31, 1944 in the amount of $15,500 and of $10,900 as of December 31, 1947.

At the trial taxpayer testified to cash on hand of $60,000 to $70,000 as of December 31, 1944. This claim, first made in a 1958 affidavit of taxpayer submitted to the Internal Revenue Service by his attorney, was based on an alleged gift in late 1942 from one Otto Blanke to taxpayer of $50,000, in cash, because of a promise made by Blanke to his first wife, taxpayer's aunt, that he would always take care of taxpayer.

There is evidence to show that Otto Blanke was in a Milwaukee hospital from November 17, 1941 until December 27, 1941; that immediately upon being released from the hospital he was driven directly to his home in West Allis, Wisconsin, where he was confined until March 1942, when he and his second wife left for a trip by automobile, driven by his wife, to his home in Florida; that Otto Blanke, on the advice of his doctor, had not driven a car for several years prior to entering the hospital in 1941; and that he died in Florida on July 22, 1942, without having made any trips after arriving there.

In the 1958 affidavit taxpayer said that he in 1945 used $22,569.49 of the Blanke gift to pay life insurance premiums and

$6,000 to purchase United States Treasury Bonds. Taxpayer testified that he could not recall using any of the remainder and that he had part of the $50,000 on hand on December 31, 1947. Taxpayer testified that Blanke drove to taxpayer's house and brought the money in a fishing tackle box and that he told taxpayer the money was his if Blanke died and that taxpayer should not tell anyone about the gift. There was evidence to establish Blanke's financial capability to make such a gift, his generosity, and his friendship with taxpayer.

In 1947 taxpayer told agents that the only gift he had ever received was $2,000 from his grandmother in 1922. His testimony at the hearing was that he still had on hand at the end of 1947 part of the cash from Otto Blanke. But if he had spent only the amounts stated for insurance premiums and bonds, taxpayer would have had a remainder of more than $21,000 on hand, an amount greater than any of the cash on hand amounts for December 31, 1947 submitted by him to the Internal Revenue Service. In his Wisconsin income tax returns for the years 1934 to 1947, the spaces for information as to gifts, given or received by the taxpayer, were left blank. And taxpayer and the Commissioner stipulated after the hearing that records of the Wisconsin Department of Taxation disclosed that he filed no state gift tax returns for the years 1934 to 1947, inclusive, either as donor or donee.

■ We think that the Tax Court's findings that no such gift was made and that the 1958 affidavit concerning the purported gift was made with intent to conceal and mislead were not clearly erroneous, and that the latter finding is supported by clear and convincing evidence.

Since we hold that the Tax Court was justified in finding fraud in connection with the above transactions, at least one of which applies to each of the taxable years in question, and since no adjustment was made in the Commission-

er's assessment because of the Boyd-Green transactions in 1946, we find it unnecessary to discuss them.

■ The point is urged that the Tax Court erred in failing to suppress evidence obtained from taxpayer by Special Agents of the Internal Revenue Service without warning him of his constitutional rights. No motion to suppress was made during the hearing and the issue was first raised on brief after the hearing in the Tax Court, which under its normal procedure as a result refused to consider the claim. Even if the claim had been properly raised, however, this court's decision in United States v. Achilli, 234 F.2d 797 (7th Cir. 1956), aff'd on other grounds 353 U.S. 373, 77 S.Ct. 995, 1 L.Ed.2d 918 (1957), has resolved the question against taxpayer's contention, in the absence of any evidence that the agents sought to or did affirmatively mislead taxpayer, or that the information was not supplied voluntarily. United States v. Spomar, 339 F.2d 941 (7th Cir. 1964).

■■ Taxpayer argues that the net worth method may not be used where all of the transactions in question appear on the taxpayer's books and records, and that his right to due process was denied by use of that method here. But a showing of unrecorded items is not a prerequisite to the use of this method of reconstructing income, Holland v. United States, 348 U.S. 121, 131–132, 75 S.Ct. 127, 99 L.Ed. 150 (1954) ; Davis v. Commissioner of Internal Revenue, 239 F.2d 187, 189 (7th Cir. 1956), cert. denied 353 U.S. 984, 77 S.Ct. 1284, 1 L.Ed.2d 1143 (1957). And the Tax Court found that there were amounts of unrecorded income from over-ceiling price sales and that taxpayer's books were inaccurate and misleading.

■ It is contended, by taxpayer, that by drawing adverse inferences from his failure to call certain witnesses, the Tax Court shifted the burden of proof to him. He testified that he told his wife about the Blanke gift. She was not

called as a witness by taxpayer and from this failure the Tax Court drew the inference that her testimony would be unfavorable to him.[5]

While failure of the taxpayer to present evidence would not of itself be sufficient to satisfy the Commissioner's burden of proof as to fraud, Shaw v. Commissioner of Internal Revenue, 252 F.2d 681, 682 (6th Cir. 1958), aff'g 27 T.C. 561 (1956), where the Commissioner has made out a prima facie case, as we think he did here, adverse inferences may properly be drawn from the taxpayer's failure to call witnesses who would otherwise be expected to be favorable to him. Shaw v. Commissioner of Internal Revenue, supra; Stoumen v. Commissioner of Internal Revenue, 208 F.2d 903, 907 (3rd Cir. 1953); Wichita Terminal Elevator Co. v. Commissioner of Internal Revenue, 6 T.C. 1158, 1165 (1946), aff'd 162 F.2d 513 (10th Cir. 1947).

■ Taxpayer contends that the Tax Court's findings of fraud as to the revolving fund and in connection with the amount of cash on hand cannot be sustained because they are based on uncorroborated admissions of the taxpayer. He relies upon Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954), and United States v. Calderon, 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202 (1954), which were criminal tax evasion cases. We do not decide whether the rule of those cases applies here, since the record discloses sufficient corroboration of the admissions. Taxpayer's statements to the agents concerning the revolving fund were corroborated both by the testimony of the broker discussed above and by the records showing the false designation of the $24,000 deposit in the bank as a loan from the bank. Respondent's (Commissioner's) Exhibit I, about which taxpayer complains in this connection, is a statement prepared by taxpayer purporting to show his net worth as of January 1, 1948, including cash on hand of only $10,900. Taken together with taxpayer's testimony that he could not recall spending more than about $28,000 of the alleged $50,000 gift, the negative implication in the statement is that the testimony about the gift was untrue. We think this admission was corroborated by the evidence showing the unlikelihood or impossibility of the gift having been made, and by the exhibits and stipulation showing that taxpayer never reported receipt of any gift to the Wisconsin Department of Taxation during the years surrounding the alleged gift.

■ We see no merit in the argument that the Commissioner failed to investigate leads supplied by the taxpayer and thus violated the rule of Holland v. United States, 348 U.S. 121, 135, 75 S.Ct. 127, 99 L.Ed. 150 (1954), that opening net worth is not established with sufficient certainty where the Commissioner fails to investigate sources of assets suggested by the taxpayer. The only such "lead" supplied by taxpayer in this case was the 1958 affidavit about the gift from Otto Blanke. We think the Commissioner's subsequent actions in locating Otto Blanke's widow and in checking his hospital, medical, death and federal and state tax records clearly dispel any notion that this lead was not adequately investigated. And the testimony of the agent who prepared the Commissioner's net worth statement proved the reasonable certainty of the $1,000 opening cash on hand figure with which taxpayer was credited.

Certain tax records were admitted into evidence which taxpayer argues should have been excluded. Taxpayer objected to the admission of Respondent's Exhibit AF, a copy of his 1948 Wisconsin gift tax return, but he has not shown how he could have been prejudiced by the document if it was improperly admitted. Contrary to his present assertion, taxpayer did not object to admission of Re-

---

5. We need not consider the other instances complained of, since they do not relate to the fraud issues.

spondent's Exhibit AG, consisting of copies of his Wisconsin income tax returns for the years 1934 to 1947, or to Exhibit AI, a summary made by an employee of the Internal Revenue Service's Milwaukee office concerning the availability of certain of taxpayer's federal tax returns.

■ Three exhibits were admitted, over taxpayer's objection, purporting to show that neither he nor Otto Blanke filed federal gift tax returns showing the purported $50,000 gift. He claims this was error. Whether or not these documents were properly admitted, we think that there is ample evidence without them to sustain the Tax Court's decision and that any error in connection with their admission would not require a reversal of the decision. Sinclair v. United States, 279 U.S. 749, 767, 49 S. Ct. 471, 73 L.Ed. 938 (1929).

■ The day before the Tax Court hearing, taxpayer served on the District Director of Internal Revenue a subpoena calling for production the next morning of

> All work papers, files and documents of any type pertaining to the investigation of Petitioners by any and all employees of Respondent * * * and all statements, affidavits, letters, memoranda or papers received from, taken of, or pertaining to any witness to testify on behalf of Respondent at the trial of said dockets.

Counsel for the Commissioner failed to comply with the subpoena and the Tax Court declined to enforce it because of its breadth. Except for a general allegation that taxpayer needed the material requested in order to try the case properly and to meet the issues presented, taxpayer attempts to make no specific showing of any prejudice from this denial. Each of taxpayer's demands for production of documents during the trial was complied with where the documents were in the possession of counsel for the Commissioner. We see no error or prejudice in the refusal to enforce the subpoena.

■ As we noted at the outset, taxpayer confined his defense to the question whether the statute of limitations on the deficiencies was tolled by fraud, but we have considered each of the transactions discussed in the briefs and we find that the presumption of correctness of the assessments was not overcome in any respect. This presumption, of course, does not attach to the fraud assessments. In connection with several of the transactions taxpayer admits that the treatment of the item was erroneous but attributes it merely to bookkeeping errors.

■ The Commissioner was improperly permitted to impeach one of his own witnesses, but the error was harmless, since the contradiction of the witness went only to the question whether he had initialed the changes made in a statement previously given to agents and admitted without objection. The witness never denied giving the agents any of the information which appears in the statement. There is sufficient testimony aside from that of the witness to support the Tax Court's decision, and the error was harmless.

■ Finally, we find no merit in taxpayer's claim that he was prejudiced by admission into evidence of his plea of *nolo contendere* in a previous criminal prosecution involving the same years in question here. The Tax Court expressly disclaimed any reliance on the plea in reaching its decision, and there thus was no prejudice.

Affirmed.