JOHN V. CONNOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Connor v. Commissioner
Docket No. 5822-75.
United States Tax Court
T.C. Memo 1977-121; 1977 Tax Ct. Memo LEXIS 321; 36 T.C.M. (CCH) 531; T.C.M. (RIA) 770121; April 27, 1977, Filed *321 Respondent failed to prove by clear and convincing evidence that any part of any underpayment of taxes by petitioner for the years 1967 through 1971 was due to fraud within the meaning of sec. 6653(b), I.R.C. 1954. Gene F. Reardon, for *322 the petitioner. Charles H. Cowley, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: In the statutory notice issued to petitioner on May 15, 1975, respondent made the following determinations in respect of petitioner's income tax liability: TYE
Over-
Addition to tax [1] 12/31
Deficiency
assessment
under sec. 6653(b)
1967
($77.18)
$1,988.64
1968
2,611.49
1969
$84.91
2,997.61
1970
3,711.89
1971
3,669.48
The only issue presented is whether petitioner is liable for each of the years 1967 through 1971, for the additions to tax for fraud asserted by respondent under section 6653(b). FINDINGS OF FACT At the time of the filing of the petition herein, petitioner John V. Connor resided in Denver, Colo. From 1949 until 1974 or 1975, petitioner was employed in the State Auditor's Office for the State of Colorado, and during the years in issue, petitioner was the ranking civil service employee in that office. Petitioner is an attorney, having been admitted *323 to the Bar of the State of Colorado in 1948, and was also certified as a CPA in Colorado in 1951. In addition to his public employment petitioner engaged during the years in issue in private practice, preparing income tax returns and doing other legal work for clients. Petitioner also served as an officer in the United States Army Reserves. During the years in issue petitioner also received income from a trust of which he was a beneficiary. Prior to and during the years in issue, petitioner was married to Ireen Connor. From sometime in the late 1940's or early 1950's, and throughout the period involved herein, Ireen operated an antique business. Although petitioner advanced some funds to Ireen for use in the business and also cosigned bank loans whose proceeds were used in her business, the antique business was Ireen's separate concern, and the books and records relative thereto were kept by Ireen. Petitioner and Ireen also maintained separate bank accounts. [2]
For years prior to 1962, petitioner and Ireen *324 had filed joint income tax returns, including the profits or losses from her antique business in the computation of their joint income. Some of their returns were filed late because of Ireen's failure to give petitioner her tax information on time. Petitioner and Ireen timely [3] filed a joint Federal income tax return for 1961. Petitioner did not file income tax returns for the years 1962 through 1971 until 1973 after an audit of his tax liability for those years had been undertaken by the Internal Revenue Service. At about the time petitioner was required to file an income tax return for each of the years 1962 through 1971, petitioner prepared a worksheet that contained items of his income and expenses which, when combined with the information relative to Ireen's antique business, would provide the factual basis for preparation of their joint returns. He would then ask Ireen for her tax information. In spite of Ireen's repeated promises to provide this information, she did not do so. Petitioner knew he was required to file an income tax return but assumed that Ireen would eventually provide *325 the information which would enable them to file an accurate joint return. Petitioner believed that the amount of tax which he paid each year by virtue of the withholding mechanism would cover the tax liability which would be shown on a joint return, and he adjusted the withholding upward from time to time when he was unable to obtain information from Ireen. Petitioner did not file or pay any estimated tax in addition to his withholding even though his outside tax and law practice yielded sufficient income to require him to do so. In January 1972 petitioner and Ireen separated, and shortly thereafter petitioner filed for divorce. Petitioner retained Jacob Chisen, an attorney who had engaged in practice since 1930 and who had a particular background in tax matters, to represent him in the divorce proceedings. Sometime in March 1972, subsequent to their initial meeting, petitioner told Chisen that he had not filed returns for 1962 through 1971 and discussed his difficulty in obtaining tax information from Ireen. Chisen had known both petitioner and Ireen for many years and suggested that petitioner allow him to attempt to get the necessary information from Ireen through her attorneys. *326 Chisen made an effort to obtain such information but was unsuccessful. Sometime in mid-June 1972, after Ireen had made it clear that she would not supply the tax information, Chisen advised petitioner to start preparing separate returns. Petitioner began to do so; petitioner reviewed the worksheets which he had previously prepared after the close of each of the years in issue, made additional notations and calculations on the worksheets to reflect his separate filing status, and took steps to acquire the proper prior years' tax forms. On August 14, 1972, Special Agent James H. Leach initiated contact with petitioner in connection with the criminal investigation of petitioner's failure to file income tax returns for the years in issue. [4] At their first meeting, petitioner explained that his failure to file was due to his inability to get the information necessary to file a joint return from Ireen and that he thought his withholding taxes were sufficient to cover his tax liabilities. Petitioner also apprised Leach of the worksheets that he had prepared [5] and which he was in the process of reworking. Leach subsequently received copies of the worksheets (which contained the *327 calculations to reflect the status of filing separately) on October 3, 1972. Throughout the course of respondent's audit and investigation of petitioner, petitioner cooperated fully and provided all books, records, and other financial information requested. Petitioner had several meetings with Leach from August 14, 1972, through October 1972, [6] during which period petitioner asked Leach whether he should prepare and file the delinquent returns himself or whether he should defer to the revenue agents and let them prepare the returns. He was told, in effect, that a revenue agent would contact him later about it. Petitioner waited but received *328 no specific instructions until April 1973, when he was asked to assist a revenue agent in reviewing petitioner's worksheets. Ultimately, petitioner prepared all of his delinquent returns, each on the basis of a married individual filing separately. The returns for 1967 through 1971, inclusive, were delivered to Leach on or about May 30, 1973; the returns for 1962 through 1966, inclusive, were filed with the Internal Revenue Service. All of the delinquent returns were accepted by respondent as substantially correct as filed by petitioner. Respondent asserted late filing and negligence penalties for the years 1962 through 1966. Petitioner paid all the taxes shown to be due on all of the delinquent returns, including the penalties asserted for the years 1962 through 1966. The delinquent returns which petitioner prepared and filed for 1967 through 1971, inclusive, contain the following information: Return
Total income
Income subject
Amount
Total tax for TY
reported
to withholding
withheld
liability
1967
$19,840.94
$14,647.70 [7]
$2,078.00
$4,054.46
1968
22,529.17
14,169.01 [7]
2,342.30
5,222.99
1969
23,001.28
16,417.56 [7]
2,742.10
5,910.31
1970
26,328.28
17,304.00
3,014.76
7,423.78
1971
26,816.40
18,144.00
3,536.30
7,338.97
*329 On October 18, 1973, petitioner was charged with violation of section 7203, failure to timely make an individual income tax return for each of the years 1967 through 1971, inclusive. On December 21, 1973, petitioner, who was represented in these proceedings by Chisen, entered a plea of guilty to the charge as to the taxable year 1970; the charges with respect to the years 1967, 1968, 1969, and 1971 were dismissed at that time upon motion by the United States Attorney. No part of any underpayment of tax by the petitioner for the years 1967 though 1971 was due to fraud within the meaning of section 6653(b). OPINION The only issue presented is whether petitioner is liable for the addition to tax for fraud asserted by respondent for each of the years 1967 through 1971, inclusive. Section 6653(b) provides, in pertinent part: (b) Fraud.--If any part of any underpayment * * * of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. *330 * * *
Fraud is never presumed, Davis v. Commissioner,184 F. 2d 86 (10th Cir. 1950); Drieborg v. Commissioner,225 F. 2d 216 (6th Cir. 1955); the burden is on respondent to prove fraud by clear and convincing evidence. Sec. 7454(a). Powell v. Grandquist,252 F. 2d 56 (9th Cir. 1958); Estate of Upshaw v. Commissioner,416 F. 2d 737 (7th Cir. 1969), cert. denied 397 U.S. 962 (1970); Steiner v. Commissioner,350 F. 2d 217 (7th Cir. 1965); Gano v. Commissioner,19 B.T.A. 518 (1930). There is no dispute that petitioner failed to file income tax returns for the years in issue (and the 5 years prior thereto) nor that such failure was willful. Without more, willful failure to file does not, however, suffice to establish fraud. Cirillo v. Commissioner,314 F. 2d 478, 482 (3rd Cir. 1963), &affg. in part and revg. in part a Memorandum Opinion of this Court; Jones v. Commissioner,259 F. 2d 300, 302 (5th Cir. 1958), revg. and remanding 25 T.C. 1100 (1956). [8] Compare Powell v. Grandquist,supra.Since *331 fraud requires proof of a taxpayer's specific intent to evade a tax believed or known to be owing, "The critical question is whether the circumstances attending a particular failure to file warrant an inference of intention to evade taxes." Cirillo v. Commissioner,supra at 482. While we do have some doubts, we cannot find in this record the clear and convincing evidence that would require us to draw such an inference. Respondent attaches much significance to petitioner's knowledge of tax matters and the fact that petitioner's failure to file extended over a period of 10 years as persuasive indicia of an intent to defraud. In general, these factors may reflect a fraudulent intent. See, e.g., Cirillo v. Commissioner,supra;Stoltzfus v. United States,398 F. 2d 1002 (3rd Cir. 1968), cert. denied 393 U.S. 1020 (1969); Beaver v. Commissioner,55 T.C. 85 (1970). In the instant context, in view of such countervailing considerations as petitioner's difficulty *332 in obtaining information which he thought necessary for the joint returns he believed he was entitled to file, his asserted belief as to the sufficiency of his withholding, the accuracy and completeness of the worksheets maintained by petitioner which correctly reflected his own income, and his cooperation with the revenue agents, we believe that the factors cited by respondent merely further attest to the willfulness of petitioner's failure to file and do not necessarily indicate the requisite intent to evade taxes. Quite simply, that petitioner intended not to file is not to say that petitioner intended to defraud. Respondent also attempts to disparage the explanation given by petitioner for his failure to file and upon which petitioner relies to negate any intention to evade tax. Notwithstanding petitioner's testimony that Ireen failed to give him the requested tax information, respondent asserts that Ireen's tax information was, however, "readily available" to petitioner and that petitioner may not, by his own failure to avail himself of such information, rely on his lack of knowledge to vitiate the requisite fraudulent intent. In so arguing, respondent invokes the authority *333 of Katz v. United States,321 F. 2d 7 (1st Cir. 1963), cert. denied 375 U.S. 903 (1963), reliance on which we believe is misplaced. For one, the context of Katz is clearly distinguishable from that herein. [9] Further, except for the fact of the physical presence of Ireen's books and records in petitioner's house, we have no evidence that the information sought was in fact "available" to petitioner, i.e., whether those books and records were kept in a proper manner so that an examination thereof would have yielded the desired information. In the absence of any such affirmative evidence, and particularly in view of respondent's failure to call Ireen as a witness, we regard respondent's contention as without support and as such, ineffective to discredit petitioner's explanation. *334 Nor, contrary to the emphasis placed thereon by respondent, do we accord much significance to the disparity between the amount of withholding tax paid by petitioner in each year and the tax liability reported on the respective delinquent return. In view of petitioner's testimony that he believed his withholding would cover his joint tax liability, we believe that respondent's comparison is inconclusive at best and instead merely begs the question of how the amount withheld compares with what petitioner's tax liability would have been had he filed a joint return with Ireen. It is this latter comparison, bearing on petitioner's state of mind during the period in issue, which is more relevant to the determination of whether petitioner harbored a specific intent to evade tax. While we do admit to some doubts as to petitioner's asserted belief in the sufficiency of his withholding taxes, as the court in Cirillo v. Commissioner,supra, noted at 482 -- the Commissioner's heavy burden of proof on the issue of fraud cannot be satisfied by mere disbelief of taxpayer's testimony. The record must contain some convincing affirmative indication of the required specific *335 intent. Other than the fact that petitioner had income in each year which was not subject to withholding, respondent presented no evidence, such as information as to whether and to what extent Ireen's antique business operated at a profit or loss, which might disprove the genuineness of petitioner's belief as to the sufficiency of his withholding tax payments. Indeed, respondent's failure to do so lends credence to petitioner's assertions as to the difficulty of obtaining such information from Ireen. In a further attempt to establish an intent to evade tax, respondent speculates that petitioner would not have filed delinquent returns, nor paid the taxes due for 1962 through 1971, had petitioner not been "discovered." See, e.g., Beaver v. Commissioner,supra at 93; Stoltzfus v. United States,supra. However, given petitioner's uncontroverted testimony that he had already begun preparation for filing delinquent returns by the time he was first contacted by Special Agent Leach and had been given instructions by his attorney to do so, compare Beaver v. Commissioner,supra, and the fact that for certain years prior *336 to 1962 he had filed returns which were delinquent, respondent's contention is without foundation and as such, devoid of merit. In essence, respondent has built his case upon the undisputed fact of petitioner's willful failure to file timely income tax returns for the years in issue. He has produced no convincing affirmative evidence of the required specific intent to evade tax. Cirillo v. Commissioner,supra. As we emphasized at the outset, a willful failure to file and an intent to evade tax may be related, but they are not congruent; from proof of the former, the latter does not necessarily follow. [10] While we do not condone petitioner's laxity in the discharge of his obligations under the tax laws, such conduct does not suffice to warrant imposition of the sanction asserted by respondent.Thus, we conclude that respondent has failed to adduce the clear and convincing proof required to satisfy his burden herein. Accordingly, we hold that petitioner is not liable for the additions to tax asserted by respondent under section 6653(b) for each of the years in issue. *337 Decision will be entered for petitioner with respect to the additions to tax under sec. 6653(b).
Decision will be entered for respondent and petitioner, respectively, for the deficiency in tax for the year 1969 and the overassessment of tax for the year 1967 as determined in the notice of deficiency. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect in the years in issue.↩
2. Ireen's financial records were kept in their house and, although regarded by petitioner as in Ireen's separate possession and control, were not kept under lock.↩
3. By "timely," we refer to the usual filing period prescribed by sec. 6072(a).↩
4. Respondent's investigation was prompted by a "confidential source." Petitioner believed such source was Ireen or someone acting on her behalf. ↩
5. Petitioner also prepared a roughed-in Form 1040 for each of the years 1967 through 1969, inclusive, which forms were neither completed nor filed. Petitioner was unable to recall exactly when these partial returns were prepared (i.e., whether contemporaneously with the respective worksheets or during the period from mid-June 1972 to August 14, 1972, or at some other unspecified time).↩
6. At none of these meetings, nor at any subsequent meeting with Leach or respondent's other agents, was petitioner assisted by counsel.↩
7. This figure is comprised of wages received by petitioner from the State of Colorado Department of Auditing and the United States Department of the Army.↩
8. See also DePumpo v. Commissioner,T.C. Memo. 1971-115; Arconti v. Commissioner,T.C. Memo. 1970-215↩.
9. One of the issues raised in Katz v. United States,321 F. 2d 7 (1st Cir. 1963), cert. denied 375 U.S. 903 (1963), involved the intent required to sustain a conviction for attempting to evade income tax by filing false and fraudulent returns. Three defendants argued that they lacked the requisite intent by virtue of the fact that their respective individual returns were signed in blank and then prepared (by an accountant) on the basis of information (as to distributions from and withholding by a corporation of which the defendants were the officers, directors, and shareholders) provided by the fourth defendant. Rejecting their contention, the court stated that "A return is not short of wilful [sic] falsity because the taxpayer chooses to keep himself uninformed as to the full extent that it is insufficient, or as to what exact figures should have been inserted." [321 F. 2d at 10↩.]
10. While we have not given consideration to it in reaching our conclusion, we cannot help but wonder why petitioner was indicted only for the misdemeanor of willfully failing to file timely returns under sec. 7203 rather than the felony of willfully attempting to evade or defeat tax under sec. 7201.↩