**THELMA C. RALEY, INC., a Florida Corporation, William L. Raley, Plaintiff–Appellee,**

**v.**

**Thomas S. KLEPPE, Deborah S. Kleppe, Defendants–Appellants.**

**No. 88–3594**
**Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

March 15, 1989.

James R. Betts, Tampa, Fla, for defendants-appellants.

Douglas A. Lockwood, III, Kerry M. Wilson, Winter Haven, Fla., for plaintiff-appellee.

Before HILL, JOHNSON and ANDERSON, Circuit Judges.

PER CURIAM:

On appeal, appellants Thomas and Deborah Kleppe challenge a certain finding of fact made by the district court which led to an award of damages against them. Their case began as a breach of contract action involving an alleged agreement to split evenly profits realized from the sale of prop-

erty owned by the Kleppes. The relevant facts are set forth below.

## I. FACTS

In 1979, Thelma C. Raley, Inc. sold a piece of property on Lake Eloise, for $100,-000, subject to a reconveyance condition. Thomas and Deborah Kleppe purchased one part of the property for $70,000; Alan Casey and his wife purchased the other part for $30,000. At the time of the purchases, all of the parties to the purchases orally agreed that if either the Kleppes or the Caseys chose to sell their property instead of building a home on the lot, they would be required to reconvey their property to Thelma C. Raley, Inc. at the same price for which the property was sold ("the reconveyance condition"). Although this reconveyance condition was discussed and agreed upon at the closing, the condition was not put in writing.

The Caseys built a house on their portion of the property. The Kleppes had several architectural plans drawn up but never actually broke ground. However, the Kleppes paid $5,009.52 in property taxes on their portion of the property and made several improvements on the property, including splitting the costs for construction of a road into the property, fencing and otherwise clearing and manicuring the property.

In 1985, Thomas Kleppe was employed in Washington, D.C., and it became increasingly clear that the Kleppes were not going to build a home on their portion of the Lake Eloise property. William L. Raley, Vice-President and Secretary of Thelma C. Raley, Inc., testified in the district court that, on February 8, 1985, he was approached by Thomas Kleppe, who proposed an agreement to compromise the reconveyance condition. Raley testified that he and Kleppe agreed to replace the reconveyance condition with an agreement to split between the Kleppes and Thelma C. Raley, Inc. any

profits the Kleppes gained upon the sale of their portion of the Lake Eloise property. Raley further testified that he received a letter from Thomas Kleppe dated February 22, 1985 which stated the identical agreement Kleppe had proposed on February 8, with the additional provision that the amount of property tax paid by the Kleppes would be deducted from the profits. Raley testified that he took the letter to Thomas Kleppe's office and signed the letter in Kleppe's presence, as an acknowledgement of his agreement to compromise the 1979 reconveyance condition in exchange for one-half of the profits on the sale of the Lake Eloise property. Only the signatures of Thomas Kleppe and William Raley appear on the letter agreement.

In 1986, the Kleppes sold their portion of the Lake Eloise property for $175,000, realizing a gross profit of $105,000. The Kleppes failure to remit to Thelma C. Raley, Inc. its portion of the profits led to the filing of this lawsuit.[1]

At trial, Thomas Kleppe testified that he never agreed with Raley to split between the Kleppes and Thelma C. Raley, Inc. any profits the Kleppes would gain on the sale of the Lake Eloise property. Moreover, Kleppe testified that he never signed the February 22 letter and that the signature appearing on that letter was a forgery. Kleppe testified that he did not discuss any profit splitting with his wife Deborah prior to July 21, 1986, and received neither her consent to split the profits, nor her authorization to agree to split the profits. Deborah Kleppe did not testify at trial.

At the end of the trial, the district court judge, on his own motion, appointed a handwriting expert to examine the February 22 letter agreement. This expert testified, at a later hearing, that the Thomas Kleppe signature appearing on the February 22 letter was a genuine signature which was executed by Thomas Kleppe.

---

1. Count I of the complaint sought damages for an alleged breach of the February 22 letter agreement. Count II of the complaint sought damages for an alleged breach of a real estate commission agreement between William Raley and the Kleppes. Count II was settled before trial. However, a request for attorney's fees under count II was discussed by the district court.

In his opinion and order, the district court judge made several findings of fact. Of particular relevance to this proceeding are three findings: (1) that Thomas Kleppe did draft and sign the February 22 letter agreement; (2) that Thomas Kleppe appeared to handle all the property interests of the marriage; and (3) that Deborah Kleppe did acquiesce in the terms of the February 22 agreement. Based on all of his findings of fact, the district court judge concluded that the February 22 letter agreement constituted a valid and binding contract between the Kleppes and Thelma C. Raley, Inc. to share the profits from the sale of the Kleppe's portion of the Lake Eloise property. The district judge concluded that the compromise of the reconveyance condition constituted adequate consideration to support the February 22 letter agreement.[2] Having found that Thomas Kleppe generally acted as the agent of the marriage in all property interests and that Deborah Kleppe consented to the profit splitting agreement, the district court held both Thomas and Deborah Kleppe liable for breach of the February 22 letter agreement and awarded damages in the amount of $47,490.48.[3]

## II. DISCUSSION

On appeal, the Kleppes challenge only the district court's finding of fact that Deborah Kleppe consented and acquiesced to the terms of the February 22, 1985 letter agreement.

The standard of review in this case is governed by Fed.R.Civ.P. 52(a) which provides in pertinent part:

Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

This deferential standard of review imposes an especially heavy burden on an appellant in a case in which the evidence is largely testimonial, and the district court has the advantage of observing the witnesses and evaluating their credibility firsthand. *Lincoln v. Board of Regents of the University System of Georgia,* 697 F.2d 928, 939 (11th Cir.1983), *reh. denied,* 705 F.2d 471, *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102 (1983). Our deference to the district court is not unlimited, however, and we will hold a finding of fact clearly erroneous if the record lacks substantial evidence to support it. *Id.* After a careful review of the record, we hold that the district court's finding that Deborah Kleppe consented and acquiesced to the terms of the February 22, 1985 letter agreement is not clearly erroneous.

The evidence adduced at trial indicates that Deborah Kleppe consented to the profit splitting agreement. Throughout the February 22 letter, Thomas Kleppe consistently used the plural form when referring to the Kleppes as sellers. The letter states in pertinent part:

[I]f Debbie and I should sell the lot, the profit obtained shall be split between ourselves and the Raleys.... At the present time we do not intend to sell, but should this occur at some future date this agreement will be honored.... We appreciate your consideration in this matter.

The frequent use of Deborah Kleppe's name and the plural pronoun in this letter is probative evidence that Thomas Kleppe felt, at the time he drafted the agreement, that he was acting on behalf and with full consent of his wife. We do not ignore the fact that during the trial Thomas Kleppe repeatedly denied that he signed the February 22 letter or discussed any kind of profit splitting agreement with his wife. However, a handwriting expert, appointed by

**2.** The district court noted that forbearance to enforce a legal right, even if that legal right is of doubtful validity, constitutes consideration sufficient to support a promise or contract. *Henderson v. Kendrick,* 89 So. 635, 637 (1921); *Lea v. Suhl,* 417 So.2d 1179, 1181 (Fla. 2d DCA 1982). The district court found that even assuming that the reconveyance condition was invalid, which it appears to have been, all the parties believed it had at least arguable merit. Therefore, the compromise of the reconveyance condition constituted adequate consideration for the profit splitting agreement.

**3.** The district court also awarded attorney's fees on count II of the complaint in favor of William Raley in the amount of $3,337.50.

the court to examine Thomas Kleppe's signature, unequivocally found that Thomas Kleppe had signed the letter. The district court judge subsequently found Thomas Kleppe's testimony in regard to his signature not worthy of belief.[4] In light of that finding, the court found Kleppe's testimony denying his wife's acquiescence equally incredible. We agree that the terms of the February 22 letter indicate that Deborah Kleppe consented to the profit splitting agreement. Moreover, we find substantial evidence to support the district court's finding that Thomas Kleppe's testimony with regard to the profit splitting agreement was not credible, including his testimony concerning the knowledge and consent of his wife.

In addition to the words of the letter, the district court used other circumstantial evidence to find that Deborah Kleppe consented to her husband's management of their property. First, testimony of the Kleppe's attorney, Alan Casey, indicated that Thomas Kleppe generally handled the legal affairs of the family and had negotiated with Casey and Raley with respect to the terms of the original purchase of the Lake Eloise property in 1979. Although Deborah Kleppe signed the closing documents in connection with the 1979 purchase and was informed of the terms of the purchase prior to closing, Thomas Kleppe appears to be the one who actually negotiated and finalized its terms.

Second, Thomas Kleppe handled all aspects of the listing agreement for the sale of the Lake Eloise property in 1985 and signed the listing agreement, with Deborah's consent, on behalf of the two of them. Appellants argue that conduct by Deborah Kleppe more than six months after the February 22 agreement has no probative value on the issue of her consent in February, 1985. However, such conduct does provide probative evidence of Deborah's consent to Thomas' management of their property.

Third, Thomas Kleppe approached William Raley, alone and solely negotiated the profit splitting agreement. As mentioned above, Thomas Kleppe executed the February 22 letter agreement on behalf of himself and his wife. Deborah Kleppe never disavowed that agreement to Raley or any other person, which suggests that Thomas Kleppe had not exceeded his authority by signing the letter agreement on her behalf.

Finally, Thomas Kleppe appeared to make all the decisions, and signed most of the checks, concerning the improvements that were made on the Lake Eloise property. Although Deborah Kleppe signed four checks, such checks were for inconsequential items and represented only a small percentage of the dollar amount of the total checks. Most of the transactions in connection with the property, particularly all major transactions, were paid for by checks executed by Thomas Kleppe.

Although not specifically discussed by the district court, we find Deborah Kleppe's absence from the trial significant. It is well settled that the production of weak evidence when strong is available can lead only to the conclusion that the strong would have been adverse. *Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 226, 59 S.Ct. 467, 474, 83 L.Ed. 610 (1939) (citing *Clifton v. United States*, 45 U.S. (4 How.), 242, 11 L.Ed. 957 (1846));[5] *see also Steiner v. Commissioner of Internal Revenue*, 350 F.2d 217, 223 (7th Cir.1965) (tax case in which court held that where Commissioner has made out prima facie case, adverse inferences may properly be drawn from taxpayer's failure to call witnesses who would otherwise be expected to be

---

**4.** In fact, the district court referred this matter to the United States Attorney for the Middle District of Florida for investigation into whether Thomas Kleppe obstructed justice, committed perjury or otherwise violated the law when testifying before the district court.

**5.** In *Clifton*, the Supreme Court noted that "if the weaker and less satisfactory evidence is given and relied on in support of a fact, when it is apparent to the court and jury that proof of a more direct and explicit character was within the power of the party, the same caution which rejects the secondary evidence will awaken distrust and suspicion of the weaker and less satisfactory; and that it may well be presumed, if more perfect exposition had been given it would have laid open deficiencies and objections which the more obscure and uncertain testimony was intended to conceal." 45 U.S. (4 How.) at 248.

favorable to him). Certainly Deborah Kleppe would have been the best witness to testify as to whether Deborah Kleppe consented to the terms of the February 22 letter agreement. Her failure to appear before the court leads us to the conclusion that her testimony would have been adverse to that of her husband. Moreover, the Kleppe's failure to provide the best evidence, Deborah Kleppe's testimony, awakens further distrust and suspicion of Thomas Kleppe's testimony in regard to the February 22 letter.

In conclusion, we find that the contents of the February 22 letter, as well as the above mentioned circumstantial evidence, provide substantial evidence that Thomas Kleppe generally acted as the agent of the marriage for all property interests, including the profit splitting agreement, and that Deborah Kleppe consented to this arrangement. Therefore, we hold that the district court's finding that Deborah Kleppe consented and acquiesced to the terms of the February 22 letter agreement is not clearly erroneous. The order of the district court is

AFFIRMED.